W. H. GARVEY, Administrator, Appellant, v. BANKERS TRUST COMPANY et al., Appellees.

No. 41072.

December 17, 1931.

Rehearing Denied April 8, 1932.

F. T. Van Liew, for appellant.

Gamble, Reed & Howland, for appellees.

Evans, J.—On October 30, 1928, the two defendants entered into a contract whereby the Trust Company took over substantially all the assets of the Savings Bank, and in consideration thereof agreed to assume all the deposit liabilities of the bank as certified by the Superintendent of Banking. The plaintiff did not appear upon the books of the bank as a depositor, and was therefore not included in the list certified by the superintendent and assumed by the Trust Company. The records of the Savings Bank showed that the account of the plaintiff had been withdrawn some months previously, and the account was balanced and closed. The Savings Bank interposed no defense to plaintiff's action, and judgment was entered against it as prayed in the petition. The contract between the two banks contemplated the taking over of nearly all the assets of the Savings Bank by the other. The occasion for such a contract apparently was that the Savings Bank was in distress and perhaps on the verge of insolvency. The assets of the Savings

Bank amounted, on their face, to thirty-two hundred thousand dollars, and its liability to depositors to twenty-nine hundred thousand dollars. A committee of bankers had examined the condition of the bank. An accurate appraisal of its assets was impracticable. It was believed that its assets, if prudently managed, would surely pay its liabilities. In order to induce the Trust Company to assume the burden of liquidating such assets, the member-banks of the Clearing House Association contributed one hundred thousand dollars, as a contingent donation. The contingency was that, if the proceeds of liquidation should prove sufficient to pay in full the liability to depositors assumed by the Trust Company, then, and not otherwise, any surplus of such proceeds should be applied to the repayment of the amount thus contributed by the Clearing House. Likewise the Trust Company contingently agreed to pay seventy-five thousand dollars to the Savings Bank as a contingent consideration, subject to the condition that the proceeds of liquidation should prove sufficient to reimburse the Trust Company otherwise in its investment, and further sufficient to reimburse the Clearing House banks for their contribution. These two items were intended to create a margin of safety to the Trust Company in its undertaking, and a margin of consideration to the Savings Bank for its transfer. The Trust Company further loaned to the Savings Bank, for immediate use, the sum of one hundred thousand dollars, and took from the Savings Bank collateral security therefor. The transaction was entered into in the utmost good faith and with the primary objective of protecting the depositors of the Savings Bank. The plaintiff's name did not appear in the list of depositors, nor did his alleged deposit appear in the list of liabilities, as assumed by the Trust Company. His contention here is that the transaction amounted to a fraud upon him, in that the Savings Bank was insolvent and that the transaction took from it substantially all its assets. He relies for precedents upon the following cases: German American State Bank v. Farmers & Merchants Savings Bank, 203 Iowa 276. Andrew v. Citizens State Bank of Goldfield, 207 Iowa 386. The Trust Company concedes in argument that the plaintiff would be entitled to relief and to recover his pro-rata share of the proceeds of liquidation if in fact the Savings Bank was insolvent, and if the Trust Company knew it, or had reason to know it. The

district court held that the insolvency of the Savings Bank was not proved.

The question of solvency or insolvency of an institution at a particular time is a question of fact, and is sometimes a very difficult one. When a solvent bank becomes insolvent there must be some particular time when it crossed the line from one side to the other. It does not follow that such change is obvious or readily ascertainable to, or by, any person. When a bank closes its doors it becomes insolvent, within the meaning of the law. The transaction considered herein contemplated the closing of the business of the bank. It has not, however, actually closed its doors or gone into a receivership. It was undoubtedly the belief of those who examined its condition that its assets were quite abundant to take care of its liabilities if managed without waste or sacrifice. It was believed that the liquidation would result in a surplus of not less than seventy-five thousand dollars, which amount the Trust Company agreed to pay to the Savings Bank. It now transpires after three years that the assets taken over by the Trust Company have shrunk greatly in valuation, and that the proceeds of liquidation, including the contribution of the Clearing House, will not be sufficient to reimburse the Trust Company for the obligations it has assumed. To the great body of depositors the undertaking of the Trust Company has been greatly beneficial and even fortunate. The fact that, in the light of the ensuing three years, the assets taken over have proven insufficient to pay the liabilities, is evidence of present insolvency. It is a circumstance to be considered also on the question whether the value of the assets had already fallen below the amount of liabilities at the time of the transaction. In view of the notorious financial condition of the country during the last two or three years, when values generally of all classes of property, including stocks, bonds, and commodities, have shrunk to an unbelievable extent, we should not be justified in saying that the values of today are an index of the values of October 30, 1928. It is notoriously true that many banks solvent in 1928 have become insolvent in these ensuing years. Upon the record before us, no better basis of judgment or standard is presented to us than the honest belief of the capable men who examined the bank to the best of their ability in 1928. The Trust Company could have had no possible motive to take the assets and assume

the liabilities of an institution if its officials believed that the liabilities were greater than the assets. As a matter of public policy, the taking over of the assets and liabilities of a solvent bank in distress, by a stronger one, is a course to be encouraged, in the interest of depositors and to the composing of the public mind in time of panic.

Though we deem the question of fact a close one, in some respects, we are disposed on the whole to concur in the judgment of the trial judge.

In the absence of proof of insolvency of the Savings Bank, the doctrine contended for by appellant is not applicable. As long as the bank was solvent, it had full dominion over its property. There is no room to doubt the good faith of the officials of the Savings Bank in making the disposition which they did.

The judgment below is accordingly affirmed.

FAVILLE, C. J., and MORLING, KINDIG, and GRIMM, JJ., concur.