### ERHARD v. BOONE STATE BANK OF BOONE, IOWA, et al.
### No. 4475.

District Court, S. D. Iowa, Central Division. June 2, 1932.

Jochems & Sargent, of Wichita, Kan., and Judson E. Piper, of Des Moines, Iowa, for plaintiff.

Frank Hollingsworth, J. W. Jordan, and Walter R. Dyer, all of Boone, Iowa, for defendant.

DEWEY, District Judge.

The above-entitled cause came on for hearing in open court on its merits, evidence was introduced, oral arguments had, and written arguments submitted, and the court being advised finds as follows:

The Boone State Bank and the Farmers' State Bank are banking institutions located at Boone, Iowa. Prior to July 11, 1930, both banks were actively engaged in the general banking business in that city. Some weeks prior thereto negotiations had been carried on between certain officers of both banks looking towards a purchase of the assets of the Farmers' State Bank by the Boone State Bank. These negotiations resulted on July 11, 1930, in the Boone State Bank purchasing practically all of the assets of the Farmers' State Bank. The sale and purchase was reduced to writing and are set out as exhibits attached to plaintiff's bill of complaint. The officers most interested in the negotiations were J. H. Roberts, president of the Farmers' State Bank, and his son, Carl Roberts, cashier; and, for the Boone State Bank, T. L. Ashford, president, B. P. Holst and C. E. McNeil, directors.

For some time prior to July 11, 1930, Genevieve Erhard had a substantial deposit in the Farmers' State Bank in a savings account. She resided at Wichita, Kan., and her deposit was procured and retained by the Farmers' State Bank as the wife of the cashier, Carl Roberts, was her sister. On July 11, 1930, she had on deposit with the Farmers' State Bank, including credits for interest made every six months, $5,734.37.

Among the assets of the Farmers' State Bank were certain so-called Ground Gripper bonds of the face value of $6,000. The Boone State Bank refused to accept these bonds as being of doubtful value. The officers of the Boone State Bank knew of the Genevieve Erhard account and knew that the Farmers' State Bank owned the Ground Gripper bonds. The day before the agreement of sale and purchase was made and the contract entered into, Carl Roberts, cashier of the Farmers' State Bank, charged off as assets of the bank the Ground Gripper bonds and debited the Genevieve Erhard account with the full amount of her deposit, causing the records of the bank at the time to show that the Genevieve Erhard deposit account was balanced and the Ground Gripper bonds withdrawn as assets of the bank. These actions were taken by Carl Roberts without the knowledge or consent of Genevieve Erhard. Interest was later credited by Carl Roberts on the passbook of Genevieve Erhard which she had from the Farmers' State Bank as of July 1, 1930, January 1, 1931, July 1, 1931, and January 1, 1932, making the deposit with accrued interest appear as of January 1, 1932, to aggregate the sum of $6,085.36.

This suit was brought by John F. Erhard, as executor of the last will and testament of Genevieve Erhard, who died prior to the commencement of the action, and is against the Boone State Bank, the Farmers' State Bank, and J. H. Roberts and T. L. Ashford, as trustees of the trust provided in the written contract of sale of the assets of the Farmers' State Bank. The relief asked is for judgment against the Farmers' State Bank, and that the judgment be impressed as a lien upon the assets received by the Boone State Bank and upon the assets received by J. H. Roberts and T. L. Ashford, as trustees, and such other relief to which in equity he may be entitled.

The plaintiff claims that the evidence establishes, among other things, first, that at the time the written contract of July 11, 1930, was entered into between the banks the Farmers' State Bank was insolvent; second, that the sale and transfer consisted of all the assets of the Farmers' State Bank and thereby fraudulently deprived creditors from an equal distribution of its assets; third, that the officers of the Boone State Bank knew of the Genevieve Erhard account and knew of the wrongful handling of her account and that the sale and transfer of the assets of the Farmers' State Bank was fraudulent as to Genevieve Erhard and the plaintiff herein.

As to the first of these fact questions, the court is unable to find from the evidence that the plaintiff has established the insolven-

cy of the Farmers' State Bank as of July 11, 1930. That the bank was somewhat in distress and the banking department of the state of Iowa had recommended that it should consolidate with some other bank might be some evidence of financial weakness, but, standing alone, is far from any satisfactory evidence that the bank was insolvent. The banking department of the state had been advising the Farmers' State Bank that on account of the depreciation of certain bonds its capital was or might become impaired. The bank statement attached to the pleadings as of July 11, 1930, shows solvency, and the plaintiff's own interested witness, Carl Roberts, when asked directly if the bank was insolvent on the 11th day of July, 1930, did not so state, but, on the contrary, said that at that time all of the parties believed that there were sufficient assets to pay all of the debts of the Farmers' State Bank. This belief on the part of all the parties that the bank was solvent at that time is further reflected in the contract itself, as it was evidently the idea of the parties entering into the contract that, not only would there be no assessment against the stockholders of the Farmers' State Bank, but that there would probably be some residue that could be distributed among them. The burden of proof was upon the plaintiff to establish insolvency, and this he has failed to do. The court therefore finds that there is no evidence that the Farmers' State Bank was insolvent on July 11, 1930.

As to the second fact question, the written contract of purchase and sale itself answers that contention. The contract did not provide for a sale of the entire assets of the Farmers' State Bank. It provided for a transfer of the assets of the Farmers' State Bank aggregating $209,851.91, and that the balance of the assets, aggregating $82,821.04 face value, should be held in trust by two trustees, primarily for the security of the note executed by the Farmers' State Bank of $30,762.69. At the time this was done the parties all believed the trust fund would, not only secure and pay this $30,762.69 note, but that the trust fund would also be ample to pay all the liabilities of the Farmers' State Bank and leave something over for the stockholders. There is no evidence in the record that this belief on the part of the officers of the bank was not the true situation and the court therefore must find that the plaintiff has failed to establish by a preponderance of the evidence that the contract did transfer all of the assets of the Farmers' State Bank to the Boone State Bank.

As to the third fact question there can be no doubt other than that the officers of the Boone State Bank knew of the Genevieve Erhard account and the Ground Gripper bonds being the property of the Farmers' State Bank prior to the transfer of the assets to the Boone State Bank, and that they also knew that Carl Roberts canceled the Erhard account and withdrew the Ground Gripper bonds from the assets of the Farmers' State Bank.

The important question here, however, is not as to this knowledge on the part of the officials of the Boone State Bank, but whether those officers knew that the action that was taken by Carl Roberts was without the authority and consent of Genevieve Erhard. The claim of the plaintiff in his petition with reference to this subject is set out in paragraph 11 of his petition, as follows: "11. Plaintiff states that the account of Genevieve Erhard was wiped out as aforesaid by said cashier of the Farmers State Bank with the knowledge and consent of the above named officers and directors of the two institutions and with the understanding that whenever the amount of the Genevieve Erhard account was collected from the trusteed assets, that then the amount of cash so collected would be deposited in the Boone State Bank and there would be set up in the accounts of said bank, the savings account of Genevieve Erhard."

To substantiate this claim in the petition, Carl Roberts, produced as a witness by the plaintiff, testified as follows:

"Q. All right now, what did you say? A. I said, 'Being this is an account of my sister-in-law's and is here and will remain here for some time, we can temporarily use this amount to offset these bonds and in the event that these bonds are insufficient to pay that deposit account, why we can fix that up later out of our trusteed assets that we will surely have in excess of what we need!

"Q. Well now what did Mr. Ashford state to that? A. Well, he said that will get those out so that we won't have to take them over."

And later, Mr. Carl Roberts testifying as to the same matter, said:

"Q. Now this conversation that you had with Mr. Ashford, what was said in regard to the ultimate taking care of the Erhard account? A. Well, if these Ground Gripper bonds were insufficient to reimburse them, there would be plenty of assets in this trustee account by that time, if the prices and conditions lasted as they were, it looked like there was plenty to take care of everything.

"The Court: You say Mr. Ashford said that? A. That was our conversation, to handle it back in that manner after the sale had been made, when the items trusteed—the items could be collected. There were some $80,000 of trusteed items, to secure this $30,000 note, plus the $3500.00 bonus and with grain prices and livestock prices such as they were, why it looked to all of us that we ought to have some money back to our stockholders instead of an assessment, there would be ample to pay everything."

This conversation was denied by Mr. Ashford, but it is far from establishing that Mr. Ashford knew that the actions of Carl Roberts were unauthorized, or that Mr. Ashford himself was a party thereto, or that the arrangement as pleaded by plaintiff in paragraph 11 of his petition is established. The officers of the Boone State Bank knew of the actions of Carl Roberts in canceling the Erhard account, but the question whether the Boone State Bank knew this was done without the authority of Genevieve Erhard is settled by the testimony of Mr. B. P. Holst and Mr. C. E. McNeil, directors, to the effect that, before the contract was signed, Mr. J. H. Roberts, the president of the Farmers' State Bank, told them that his son, Carl Roberts, had sold the bonds to his sister-in-law, and that her account had been taken out of the bank by the sale of the Ground Gripper bonds to her. This testimony on the part of these two directors, Holst and McNeil, is not denied by Carl Roberts or his father.

The court does not overlook the testimony of the plaintiff that in September, 1930, he had a conversation with Mr. Ashford in which the latter told him that the bank greatly appreciated the account, and that it was not necessary to change the passbook to a Boone State Bank passbook. Mr. Ashford denies this conversation, but the situation is such that the court is satisfied that the plaintiff did have such a conversation with Mr. Ashford, and that Mr. Ashford at that time knew that the actions of Carl Roberts in canceling the Genevieve Erhard account were without authority. In view of the testimony, however, of Carl Roberts as to what was said prior to the sale of the assets to the Boone State Bank and the statements of his father that this action on the part of Carl Roberts was done with authority makes this testimony of little force or effect in establishing that at the time of the sale of the assets of the Farmers' State Bank the Boone State Bank and its officers knew that the actions of Carl Roberts were unauthorized, or that there was the agreement relied upon by the plaintiff as set out in paragraph 11 of his petition.

The court therefore finds that the plaintiff has failed to establish by a preponderance of the evidence this contract relied upon by the plaintiff in his written petition. These findings of fact, being contrary to the facts relied upon by plaintiff in his presentation of the case, do not require any extended conclusions of the law applicable to the situation here presented. It has been repeatedly held that sale of this character between solvent banks is an authorized corporate act and when made in good faith on the part of both parties to the transaction and for value cannot be assailed by a depositor of the selling bank. Garvey v. Bankers' Trust Co., 214 Iowa, 401, 239 N. W. 518; German American State Bank v. Farmers' & Merchants' Savings Bank, 203 Iowa, 276, 211 N. W. 386; Ludecke v. Des Moines Cabinet Co., 140 Iowa, 223, 118 N. W. 456, 32 L. R. A. (N. S.) 616; City Natl. Bank of Huron v. Fuller (C. C. A.) 52 F. (2d) 870, 79 A. L. R. 71.

It is very apparent that the plaintiff is entitled to a judgment as against the Farmers' State Bank of Boone, Iowa, for the amount of his claim, but is not entitled to a judgment against or a lien upon the assets of the Boone State Bank; and, while the plaintiff is entitled to a lien as upon and against the assets in the hands of the trustees on an equal basis with all other claims of a similar nature, the plaintiff here in his argument says there are no assets in the hands of the trustees of any value over and above the lien thereon and the rights thereto given to the Boone State Bank under the contract of sale. The statement of the plaintiff in his brief in this regard is: "The Farmers State Bank no longer has any assets which could in any way be made available to the plaintiff."

There can be no question but that Genevieve Erhard was very badly treated by Carl Roberts as cashier of the Farmers' State Bank, and that his unlawful, if not criminal, acts are responsible for the loss of her account, but before the plaintiff can establish such a criminal act on the part of the officers of the Boone State Bank more satisfactory evidence should be presented than was introduced in this case. The only relief that could be suggested on the part of this court is that the plaintiff could have a receiver appointed for the Farmers' State Bank and he could procure a 100 per cent. assessment on the stockholders of the Farmers' State Bank and thus secure at least some return for this money which was unlawfully taken from Gene-

vieve Erhard. The clerk will therefore enter the following order:

The above-entitled cause came on for hearing on its merits, was argued and submitted, and the court, being advised, finds that the plaintiff is entitled to a judgment against the Farmers' State Bank of Boone, Iowa, in the sum of $6,085.36, with interest from February 11, 1932, and for the costs in this action, and the clerk will enter a judgment for the plaintiff in that amount; and that the relief asked by the plaintiff as against the Boone State Bank of Boone, Iowa, and J. H. Roberts and T. L. Ashford, as trustees of an express trust, is denied, and the plaintiff excepts.