Charles F. Alexander, Appellee, v. State Savings Bank and Trust Company and Liberty Bank of Chicago, Defendants.
Appeal of Liberty National Bank of Chicago, Appellant.

Gen. No. 38,068.

Opinion filed June 28, 1935. Rehearing denied July 8, 1935.

WILHARTZ, HIRSCH & SCHANFARBER, of Chicago, for appellant; SAMUEL E. HIRSCH, JACK A. DIAMOND and EUGENE H. NIRDLINGER, all of Chicago, of counsel.

FRANK O. HILBURN, of Chicago, for appellee.

MR. PRESIDING JUSTICE McSURELY delivered the opinion of the court.

Liberty National Bank of Chicago, a corporation, hereafter called defendant, appeals from a judgment for $5,991.56 entered against it by decree *pro confesso* upon an order of default for its failure to appear, and from the order denying its petition for the vacation of the order of default and decree.

Defendant asserts that the evidence shows it was not served with summons. Summons was issued July 18, 1934, notifying the defendants to appear in the circuit court on or before the third Monday of August, 1934; the sheriff's return states that the deputy served the writ on the defendant "by leaving a copy thereof with Maurice Cohn, trust officer of said corporation, this 20th day of July, 1934." Cohn testified, upon the hearing on the petition, that a copy of the summons was not served upon him; that the first time he saw the summons was about five weeks after the entry of the decree. The deputy sheriff, Michael Smuda, testified that he did not leave a copy of the summons with the witness, Maurice Cohn; that he had served a great number of summonses upon the bank; that the president, secretary and treasurer of defendant would not accept service of summonses but directed him to go to the trust department; that he laid the summonses before the man at the trust department counter and asked the name of the man upon whom service was made and was given the name Maurice Cohn, trust officer; that this was done in this case. We hold that this service was good. Service on any officer or agent of the corporation would have been good, and when the deputy, as directed by the defendant's officials, left the copy of the summons with the man at the trust department counter and returned

service on Maurice Cohn, trust officer, this was service upon the defendant bank. Names by which persons are summoned are immaterial, the essential question being whether the party in interest was actually served. *Pond v. Ennis,* 69 Ill. 341.

The decree against the defendant was entered October 15, 1934; the defendant filed its petition to vacate the decree November 28, 1934, or a few days after the expiration of the term in which the decree was entered. Section 17 of the old Chancery Act, ch. 22, Cahill's Statutes (1931) provided that the defendant may appear at the next term and offer to file an answer, which the court may permit upon the showing of a sufficient cause. In *Hoover v. Regner,* 242 Ill. App. 532, this section was held applicable to the next term after a decree *pro confesso* is entered. Section 17 of the Chancery Act was repealed by the Civil Practice Act of 1933 (sec. 94). However, the Civil Practice Act of 1933, ch. 110, par. 270 (Cahill) provides as follows:

"Any such judgment, decree or order may hereafter be modified, set aside or vacated after the expiration of such thirty days in the same cases, to the same extent and by the same modes of proceeding as, under the law heretofore in force, it might have been modified, set aside or vacated after the expiration of the term of court at which it was rendered."

While the instant procedure did not technically follow the mode prescribed under section 17 of the old Chancery Act, yet the petition with the motion to vacate the judgment also alleged facts, which had the effect of an answer. If, therefore, these allegations present a meritorious defense to the complaint, the judgment should be vacated and the cause proceed to a hearing upon the issues presented.

Plaintiff sued State Savings Bank & Trust Company, assignee of Independence State Bank, and Liberty Bank of Chicago, seeking the rescission and cancellation of a contract for the purchase of land and

the return of all moneys paid by plaintiff under the contract.

Plaintiff alleges that on June 14, 1926, the Independence State Bank entered into a contract to sell certain real estate to Mrs. Lee DeWilt for $4,250, to be paid in certain instalments, title in the grantor to be shown by a Torrens certificate of title; that on or about September 2, 1931, Mrs. DeWilt assigned all of her rights under the contract to plaintiff; that she and plaintiff made the last payment on the contract on January 15, 1931, and at that time plaintiff requested the State Savings Bank & Trust Company to issue to plaintiff or to Mrs. DeWilt a deed and certificate of title, but defendants would not comply with the terms of the contract; that afterward, on July 7, 1931, plaintiff went to the "defendant bank" requesting a deed and certificate of title, which "defendant" refused to deliver; that August 25, 1931, State Savings Bank issued a deed in the name of Lee DeWilt but failed to furnish plaintiff or Mrs. DeWilt a certificate of title, and the registrar of titles refused to accept the deed delivered to plaintiff for recording. Plaintiff also alleged that on September 14, 1931, he demanded a return of all payments but the defendants failed to comply with the demand; that at the time the contract was executed the defendants knew they would be unable to furnish a certificate of title and fraudulently received the payments with knowledge that they could not perform the contract.

It should be noted that while the complaint prayed that the contract for the purchase of the property be set aside and declared null and void and that defendants pay plaintiff such sums of money as were paid by him or Mrs. DeWilt, the decree makes no disposition of the contract and only assesses plaintiff's damages. This leaves the contract and the deed delivered on August 25, 1931, in full force and effect. The decree is inconsistent in this respect.

Defendant says the allegations of the complaint with reference to the assignment of the contract for the purchase of the real estate by Mrs. DeWilt to the plaintiff are not in compliance with section 22 of the Civil Practice Act, ch. 110, ¶ 150, Illinois Statutes (Cahill). Even if the point had merit, which in our opinion it has not (*Bishop v. Dignan,* 223 Ill. App. 178), an amendment supplying any deficiency has been filed and should be considered by the trial court upon the remandment of this cause.

Defendant argues that the complaint on its face shows laches. The complaint alleges that in January, 1931, plaintiff requested the State Savings Bank to issue a certificate of title, which it refused; that July 7, 1931, he again made such demand, which was again refused; and on September 14, 1931, he demanded a return of all payments, which was refused. The complaint was filed July 18, 1934, or nearly three years after the attempted rescission. The complaint contains no explanation of this delay, although on oral argument counsel for plaintiff stated facts which it was argued excused the delay. Plaintiff argues that laches may be invoked as a defense only where the neglect to assert a right for a lapse of time is taken in conjunction with other circumstances causing prejudice to an adverse party. It has been said that mere delay will not constitute laches unless the delay works a disadvantage to the one pleading it. *Lutyens v. Ahlrich,* 308 Ill. 11; *Neidhardt v. Frank,* 325 Ill. 596. Examination of the petition filed by the defendant clearly shows that the unexplained delay in filing the suit worked to the prejudice of the defendant, as hereafter will appear.

Defendant alleges that from December 29, 1932, to August 11, 1934, it did business as a state bank, but on the latter date it received a charter from the United States authorizing it to do business as a national bank, and it was then converted into a national bank and its

name changed from Liberty Bank of Chicago to Liberty National Bank of Chicago.

The complaint alleged, in general terms, that the State Savings Bank & Trust Company was the assignee of Independence State Bank, which was "taken over and amalgamated with" State Savings Bank &. Trust Company; that State Savings Bank & Trust Company was later "taken over" by Liberty Trust & Savings Bank, which latter bank was subsequently "taken over and amalgamated with" the defendant, Liberty Bank of Chicago. No dates are given nor is it alleged how or in what manner these various transfers were made.

Defendant's petition denies that the Liberty Trust & Savings Bank was at any time taken over by or amalgamated with the Liberty Bank of Chicago. The petition sets up a contract under which the Liberty Bank purchased certain assets of Liberty Trust & Savings Bank and assumed certain liabilities of the last named bank. The contract recited that the Liberty Trust & Savings Bank was on the verge of insolvency and that its continuance without the replenishment of capital jeopardized the interest of depositors and other creditors; that on December 29, 1932, a contract was entered into between the Liberty Trust & Savings Bank and the Liberty Bank of Chicago, a copy of which was attached to the petition, and pursuant to the contract the Liberty Trust & Savings Bank sold and delivered to the defendant, Liberty Bank of Chicago, certain properties listed in schedule "A" attached to the contract, consisting chiefly in cash, clearings, money due from banks, bonds, and accounts receivable; that it did not include the contract upon which plaintiff bases his cause of action; that the assets transferred and sold to the Liberty Bank were only a part of the assets of the Liberty Trust & Savings Bank and that many other assets remained with the last named bank; that the Liberty Bank assumed

certain liabilities of the Liberty Trust & Savings Bank as expressly specified in schedule "B" attached to the contract. This schedule of liabilities assumed by the Liberty Bank provided that only the liabilities listed were assumed by it, and the Liberty Trust & Savings Bank warranted that said liabilities included all of its deposit liabilities and current liquidated liabilities as shown by its records at the close of business on December 29, 1932. The listed liabilities do not include the liability, if any, upon which plaintiff predicates his cause of action. Neither did it appear upon the records of the Liberty Trust & Savings Bank. The contract also stated that the transaction was one of purchase and sale.

Defendant further alleged that plaintiff had not at any time demanded of it that it comply with the alleged agreements contained in the contract relied upon by plaintiff; that during June, 1931, and September, 1931, the dates of the alleged breach of the contract, defendant was not in existence and plaintiff therefore could not have made the demands upon defendant as alleged in the complaint.

It is obvious that if defendant's allegations are true and there is no countervailing evidence presented by plaintiff, the delay in filing the complaint was such neglect as to amount to laches. Had plaintiff's claim been filed before the defendant purchased from the Liberty Trust & Savings Bank, on December 29, 1932, defendant would have had knowledge of plaintiff's claim and could have taken steps to protect itself.

Moreover, if defendant can prove its allegations with reference to the transaction pursuant to its contract with the Liberty Trust & Savings Bank, there can be no recovery against it. Where one bank sells certain definite assets to another bank, the purchasing bank assuming certain specified debts, the purchasing bank is not liable for other debts than those it specifically assumed. In *Drovers' & Mechanics' Nat. Bank*

*v. First Nat. Bank of Sutton,* 260 Fed. 9, the contract of purchase by one bank of the assets of another was inadvertently described as a merger. The court held that this was not the case; that every asset purchased and every debt assumed was particularly specified and that the purchasing bank did not become liable for any debt not assumed by it and mentioned in the contract of purchase. This has been the universal holding. *Garvey v. Bankers Trust Company,* 214 Iowa 401; *Carswell v. National Exchange Bank,* 165 Ga. 351; *Morgan County v. Thomas,* 76 Ill. 120; *Bruffett v. Great Western R. Co.,* 25 Ill. 353; *Beardstown Pearl Button Co. v. Oswald,* 130 Ill. App. 290; *Chicago Smelting & Refining Corp. v. Sullivan,* 252 Ill. App. 259; *Knass v. Madison & Kedzie State Bank,* 269 Ill. App. 588. And as stated in Fletcher, Cyclopedia Corporations (Permanent Edition), vol. 15, sec. 7122:

"The general rule, which is well settled, is that where one company sells or otherwise transfers all its assets to another company, the latter is not liable for the debts and liabilities of the transferor. The purchasing or transferee company, that is to say, is not liable on the other company's obligations merely by reason of its succession to such company's property. To render it liable there must be an agreement express or implied, to assume the other company's debts and obligations."

The petition of the defendant tended to show an ample defense. The lower court, in sustaining objections of the plaintiff to the defendant's offer to introduce evidence to establish a defense, was in error.

Other points are made which it is unnecessary to discuss.

The judgment is reversed and the cause is remanded for further proceedings consistent with what is said in this opinion.

*Reversed and remanded.*

MATCHETT and O'CONNOR, JJ., concur.