IRENE JOHNSON, Plaintiff-Appellant, *v.* MARSHALL AND HUSCHART MACHINERY CO., Defendant.—V & O PRESS CO., INC., Defendant-Appellee.)

First District (3rd Division)    No. 77-1883

Opinion filed November 29, 1978.

Robert M. Hoenig, of Evanston, for appellant.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (D. Kendall Griffith, A. Mark Ialongo, and Stephen R. Swofford, of counsel), for appellee.

Mr. PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

The plaintiff, Irene Johnson, appeals from a summary judgment entered by the circuit court of Cook County in favor of the defendant, V & O Press Company, Inc. The plaintiff seeks damages for injuries sustained on July 23, 1974, while operating a punch press manufactured in 1937 by V & O Press Company, Inc. That company ceased to exist in 1938. The issue on appeal is whether a strict liability suit may be maintained against a successor corporation, based on torts committed by its predecessor. Marshall & Huschart Machinery Co., distributor of the press in question, is also a defendant to this suit but is not a party to this appeal.

The defendant based its motion for summary judgment on the fact that it did not manufacture the punch press which injured the

plaintiff and that it had not agreed to assume liability for tort claims against its predecessors. The plaintiff appeals from the granting of that motion in favor of the defendant.

The press in question was manufactured in 1937 by a V & O Press Company, Inc. (1937 V & O). The 1937 V & O was incorporated in the State of New York in 1923. That company changed its name to Hudson Press Co. (Hudson) in 1937. In 1938, Hudson transferred title to a successor V & O Press Co. (1938 V & O). In 1942, the 1938 V & O transferred title to Marshall Field and Charles G. Cushing, a partnership, and the 1938 V & O was dissolved. The partnership did business as V & O Press Company.

In April 1944, another V & O Press Company was incorporated in the State of New York (1944 V & O). Later that year the Field/Cushing partnership transferred title to the 1944 V & O. In 1947, the 1944 V & O conveyed title to Rockwell Manufacturing Company (Rockwell), which operated the business as a division of Rockwell under the name V & O Press Company. In 1950 Rockwell transferred the title of its V & O Division to the Hartford-Empire Company (Hartford), and Hartford later changed its name to Emhart Manufacturing Company (Emhart). Both Hartford and Emhart operated the division under the names Hudson Division and V & O Division.

In 1963, Thomas Rudel contracted with Emhart for a cash purchase of the Hudson and V & O Divisions. The defendant V & O Press (New V & O) was incorporated on that same day and Thomas Rudel became chairman of the board. Rudel assigned his interest in the contract to purchase the V & O Division of Emhart to the defendant, New V & O. Rudel purchased only a portion of Emhart's assets, and Emhart continued as an active business entity subsequent to the sale. The purchase by Rudel included assumption of only some of Emhart's obligations. The New V & O acquired its assets from Rudel in exchange for all of the New V & O's stock.

All of these business entities owned and used the same real estate, manufacturing plant and offices on Union Turnpike, Greenport, New York, the plant and offices being expanded on various occasions over the years. Each company manufactured power presses and parts. The record contains no evidence of the identities of the individuals who owned these successive business entities, other than Thomas Rudel, Marshall Field and Charles Cushing.

Twenty shop and office employees of the 1937 V & O continued to work for each of the intervening business entities and have been employed by the defendant. The record contains no evidence of the total number of persons employed by either the 1937 V & O or the New V & O. The 20 employees include an accountant who today is comptroller of the New V & O; the sales manager of the 1937 V & O who worked as sales

manager for the New V & O until his retirement in 1965; two engineers who were employed by each of the entities, including the New V & O; and another engineer who was both vice president in charge of engineering and a director of the New V & O until his retirement in 1968, having also worked for the 1937 V & O, and for each of the intervening V & O's.

Each of the V & O entities has used the same logo and trademark on its advertising material and presses. The New V & O has serviced machines which were manufactured by the 1937 V & O, and has also manufactured, distributed and sold replacement parts for presses built by the 1937 V & O, including parts for the press which injured the plaintiff. Some of the New V & O's customers were also customers of the 1937 V & O, and the presses manufactured by the New V & O are functionally similar to those manufactured by the 1937 V & O.

● 1 The common law and Illinois rule concerning the amenability of a corporation to a suit based on the debts and liabilities of its predecessor was stated in *Alexander v. State Savings Bank & Trust Co.* (1935), 281 Ill. App. 88, 96, quoting 15 Fletcher, Cyclopedia Corporations §7122 (perm. ed.):

> " 'The general rule, which is well settled, is that where one company sells or otherwise transfers all its assets to another company, the latter is not liable for the debts and liabilities of the transferor. The purchasing or transferee company, that is to say, is not liable on the other company's obligations merely by reason of its succession to such company's property. To render it liable there must be an agreement express or implied, to assume the other company's debts and obligations.' "

See also *Buis v. Peabody Coal Co.* (1963), 41 Ill. App. 2d 317, 190 N.E.2d 507; *Commercial National Bank v. Newtson* (1976), 39 Ill. App. 3d 216, 349 N.E.2d 138.

■■ This general rule is often held subject to a number of exceptions. Liability is found where (1) there has been a consolidation or merger of corporations; (2) the transaction is fraudulent; or (3) the purchasing company is a mere continuation of the seller. Fletcher, Cyclopedia Corporations §§7122-7124 (rev. ed. 1962).

The plaintiff agrees that the present status of the law is that a transferee corporation is not liable for its predecessor corporation's debts or liabilities, and she does not argue that this case falls within the exceptions. She does argue, however, that this is a products liability case and thus distinguishable. She asserts that those rules were developed to protect the rights of a corporation's creditors and minority shareholders, and that a different analysis is necessary in a products liability case.

The defendant relies on four Illinois cases in its argument that the purchasing corporation, New V & O, is not liable for the torts committed

by a distant predecessor, the 1937 V & O. None of these cases dealt with strict liability in tort. (*Alexander v. State Savings Bank & Trust Co.* (1935), 281 Ill. App. 88, concerned a land contract.) *Plaza Express Co. v. Middle States Motor Freight, Inc.* (1963), 40 Ill. App. 2d 117, 189 N.E.2d 382, dealt with the liability of a successor corporation for a tort committed by its predecessor, but the suit was not based on strict liability. *Buis v. Peabody Coal Co.* was grounded in negligence, and the *Commercial National Bank* case was based on contract law. We do not believe the Illinois courts have addressed the issue of whether a successor corporation may be held amenable to a suit based on strict liability for the torts of its predecessor.

The purpose of strict liability in tort is to place the loss caused by defective products on those who create the risk and reap the profit by placing such products in the stream of commerce, regardless of whether the defect was caused by "negligence" on the part of the manufacturer. (*Liberty Mutual Insurance Co. v. Williams Machine & Tool Co.* (1975), 62 Ill. 2d 77, 338 N.E.2d 857.) The rationale underlying this liability is threefold: (1) the public interest in human life and safety demands broad protection against the sale of defective products; (2) the manufacturer solicits and invites the use of his product by representing that it is safe and suitable for use; and (3) the losses caused by defectively dangerous products should be borne by those who have created the risk and reaped the profit by placing the product into commerce. *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 210 N.E.2d 182.

Most of the courts in the jurisdictions which have addressed the issue of the liability of a successor corporation for the strict liability torts of its predecessor have treated it as a question of corporate law rather than one of strict liability, and have denied the claim unless the case fit into one of the exceptions enumerated above. (See, *e.g., Shane v. Hobam, Inc.* (E.D. Pa. 1971), 332 F. Supp. 526; *Kloberdanz v. Joy Manufacturing Co.* (D. Colo. 1968), 288 F. Supp. 817.) Some courts, however, have avoided the usual no-liability conclusion by broadening the existing exceptions. For example, in *Knapp v. North American Rockwell Corp.* (3d Cir. 1974), 506 F. 2d 361, *cert. denied* (1975), 421 U.S. 965, 44 L. Ed. 2d 452, 95 S. Ct. 1955, the court noted that resolution of the issue of transferee liability requires "an analysis of public policy considerations rather than by a mere procrustean application of formalities \* \* \*." 506 F.2d 361, 369. See also *Cyr v. B. Offen & Co.* (1st Cir. 1974), 501 F.2d 1145. But see *Turner v. Bituminous Casualty Co.* (1976), 397 Mich. 406, 244 N.W.2d 873.

The plaintiff urges that we adopt the rationale of *Ray v. Alad Corp.* (1977), 19 Cal. 3d 22, 560 P.2d 3, 136 Cal. Rptr. 574. In *Ray* the manufacturer of the ladder on which the plaintiff was injured, Alad I, sold its assets, trade name and goodwill to Alad II on July 1, 1968. The plaintiff was injured March 24, 1969, on the defective ladder and sued Alad II.

Alad II had continued to manufacture the same line of ladders under the same name, used the same equipment and personnel, and solicited its predecessor's customers through the same sales representatives with no outward manifestation of any change in the ownership of the business.

Alad I also agreed to assist and cooperate with Alad II in the organization of a new corporation; the principal stockholders of Alad I agreed not to compete with Alad II for 42 months and to provide nonexclusive consulting services during that time; and one of the principal stockholders of Alad I was employed as a salaried consultant by Alad II for its first five months of existence. The trial court granted Alad II's motion for summary judgment.

The California Supreme Court held that a transferee which continues a product line is subject to strict tort liability for defective units of the same line which was manufactured and distributed by the transferor. The court found that none of the traditional exceptions applied to the case and refused to extend the continuity exception because such a holding would encompass creditors generally, rather than strict liability plaintiffs particularly. The California court found three reasons for justifying the imposition of liability on the transferee: (1) the nonavailability of any remedy against the transferor because it liquidated prior to the plaintiff's injury; (2) the transferee's position as best able to judge the risks of injury from previously distributed products and to insure that the costs of injuries from defective products are spread to current purchasers of the product line; and (3) the goodwill transferred to and enjoyed by the transferee could not have been enjoyed by the *transferor* without the concomitant burden of liability for defects in the product line. The court concluded that "a party which acquires a manufacturing business and continues the output of its line of products under the circumstances here presented assumes strict tort liability for defects in units of the same product line previously manufactured and distributed by the entity from which the business was acquired." *Ray*, 19 Cal. 3d 22, 34, 560 P.2d 3, 11, 136 Cal. Rptr. 574, 582.

Under the circumstances presented in the case against New V & O, we believe that the rationale of *Ray* is not applicable. The factual situation present in *Ray* is markedly different from the one we address. The sale of the business and the injury in *Ray* occurred within the space of nine months. In this case, the sale of the business and the injury were separated by 36 years. In *Ray* the manufacturer of the defective machine sold directly to the defendant. In the instant case, there were numerous transfers preceding the defendant's acquisition of the business. Finally, unlike *Ray*, here there were no consulting arrangements and agreements not to compete between the manufacturer and the transferee corporation.

The *Ray* court found important the fact that the plaintiff was left with no adequate remedy following the liquidation of the manufacturer. In holding the transferee subject to suit, the court reasoned that Alad II had the ability to estimate and assume Alad I's risk spreading costs, and that it was only fair to require the transferee to assume the responsibility for the defective product because Alad II also had the concomitant *benefit* of Alad I's accumulated goodwill.

In the case at bar, the ability of the New V & O to estimate and assume the 1937 V & O's risk spreading costs and the fairness of requiring the New V & O to assume responsibility for a defective press which was manufactured in 1937 is not so apparent after all the intervening years and changes in ownership.

The *Ray* court also found it was fair and equitable to impose liability in that case because Alad II had acquired the trade name, goodwill, and customer lists of Alad I and was holding itself out as the same enterprise. The court believed these facts would give Alad II a substantial and unjustified advantage over Alad I if Alad II were not also required to assume the burden of liability for Alad I's defective ladders. The court concluded that Alad II became an integral part of the overall producing and marketing enterprise and should bear the cost of the injuries occurring as a result of the defective product.

■■ The period of 36 years between this plaintiff's injury and the manufacture of the press, together with the many changes in ownership, militate against the conclusion that the New V & O received a substantial benefit by virtue of the 1937 V & O's goodwill or that it was an actual integral part of the same overall producing and marketing enterprise as the 1937 V & O. We conclude that under the circumstances here presented the defendant did not assume liability for the defective products of its predecessor.

For the foregoing reasons the judgment of the circuit court of Cook County is affirmed.

Affirmed.

McNAMARA and SIMON, JJ., concur.