[No. 9732–6–I.   Division One.   June 14, 1982.]

PHILLIP SEIPP, *Appellant,* v. STETSON ROSS MACHINE
COMPANY, ET AL, *Respondents.*

*Crane, Stamper, Boese & Dunham, Thomas J. Lucas,* and *Steve Daily,* for appellant.

*Davis, Wright, Todd, Riese & Jones, D. Bruce Lamka,* and *Kirk Portmann,* for respondents.

CALLOW, J.—Phillip Seipp appeals from an order of summary judgment dismissing defendants Roland Voigt and the Stetson Ross Machine Company on the ground that a legally sufficient basis was not presented for imposing successor liability upon those defendants. Seipp, a young deaf man, severely injured his left hand in 1975 while operating a cleat saw manufactured in 1953.

The saw, known as the California Cleat Saw, was manufactured by California Engineering and Machine Works, a defunct corporation which, according to the affidavit of Seipp's attorney, became Miller Manufacturers' Association and then Associated Machinery and Sales Company. Associated Machinery then became the Turner Machinery Company, which produced a Miller line of saws and a Turner line of saws. The plaintiff has been unable to determine which product line descended from the California Cleat Saw. The Turner Machinery Company was acquired in 1964 by the P. B. Yates Machine Company of Hamilton, Ontario, Canada. In 1967 P. B. Yates decided to close their San Francisco operations and divided their saw–producing divisions. Roland Voigt, an experienced machinist and from 1949 to 1967 an employee of California Engineering and Machine Works and its successor companies, received, in 1967, in lieu of severance pay from P. B. Yates Company "all blue prints, tracings, patterns, jigs, fixtures and parts inventory relating to the Miller line of woodworking machinery." Voigt never designed or produced cleat saws on his own, although he sold the parts inventory he received as severance pay from P. B. Yates.

Stetson Ross Machine Company is a manufacturer of planing, sawmill, and woodworking machinery. The com-

pany does not distribute or sell any other line of machinery. Stetson Ross has never manufactured, sold or distributed a California Cleat Saw. On November 1, 1967, Stetson Ross acquired from P. B. Yates the right to manufacture all products then being manufactured by P. B. Yates, and to sell Yates' existing inventory, which included six Turner saws assembled before Turner Machinery was acquired by P. B. Yates in 1964. Part of Stetson Ross' agreement provided that the warranties and representations made by P. B. Yates "shall be construed subject to the agreements initialed and set forth in Schedule 'C' hereto annexed."[1]

Upon their motions for summary judgment, the trial court held that the plaintiff failed to establish that Voigt and Stetson Ross were successors to the original saw manufacturer, California Engineering and Machine Works, and dismissed those defendants.

■ We turn to the question of whether summary judgment was granted properly to these defendants. A summary judgment of dismissal is proper only if the pleading, affidavits, depositions and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. All reasonable inferences must be resolved against the movant and considered in the light most favorable to the nonmoving party. *Barrie v. Hosts of Am., Inc.*, 94 Wn.2d 640, 618 P.2d 96 (1980). We will consider each defendant's motion for summary judgment separately.

### STETSON ROSS

■■ Where one company sells all its assets to another company, the purchaser is not liable for the debts and obligations of the seller, except where (1) there is an agreement

---

[1]Schedule "C" to the agreement included the 1964 purchase agreement between Turner Machinery Company and P. B. Yates, which provided in part: "[P. B. Yates] shall indemnify [Turner Machinery Company] against and save it harmless from any and all debts, liabilities and obligations accruing or based upon or arising out of facts occurring after the closing date and connected with the property and business sold hereunder or the operations thereof . . ."

to assume the other company's debts or obligations; or (2) there has been a consolidation or merger of the companies, RCW 23A.20; or (3) the transaction works a fraud on the seller's creditors; or (4) the purchasing company is a continuation of the seller. *Culinary Workers Local 596 v. Gateway Cafe, Inc.,* 91 Wn.2d 353, 588 P.2d 1334 (1979); *Cashar v. Redford,* 28 Wn. App. 394, 624 P.2d 194 (1981); 15 W. Fletcher, *Private Corporations* § 7122 (rev. ed. 1973). Two factors helpful in determining if a successor corporation is a continuation are: (1) a common identity of the officers, directors, and stockholders in the selling and purchasing companies; (2) sufficiency of the consideration given the seller in light of the assets sold. *Cashar v. Redford, supra.* These conditions have not been proved or alleged and Stetson Ross is not a legal successor to California Engineering and Machine Works.

■ Assuming, as alleged by the plaintiff, that Turner Machinery was a mere continuation of California Engineering, that connection was terminated in 1964 when P. B. Yates acquired the assets of Turner Machinery from the American Forest Products Corporation for $115,000. Yates expressly assumed responsibility only for the liabilities and debts arising after the date of purchase and did not assume the obligations of the unnamed predecessors of the Turner Machinery Company. Stetson Ross' 1967 agreement with P. B. Yates does not alter this break in liability.

### ROLAND VOIGT

Voigt did not contractually assume the liability of P. B. Yates, nor does the sale of a few Yates' assets constitute a merger, continuation or fraud. None of the usual exceptions therefore apply to transfer liability to Voigt. *Cashar v. Redford, supra.*

### THE CALIFORNIA RULE OF SUCCESSOR LIABILITY

The plaintiff asserts as an additional basis for imposing liability upon both Voigt and Stetson Ross a rule adopted in some jurisdictions dealing with products liability cases, most notably in *Ray v. Alad Corp.,* 19 Cal. 3d 22, 560 P.2d

3, 136 Cal. Rptr. 574 (1977). In *Ray* the court held that a transferee which continues a product line is subject to tort liability for defective units in the same line manufactured and distributed by the transferor. The court rejected extension of the continuity exception to the rule of nonliability because such an extension would encompass all creditors generally rather than just products liability plaintiffs.

> [C]onsiderations favoring continued protection for injured users of defective products . . . include (1) the nonavailability to plaintiff of any adequate remedy against [the transferor] as a result of [their] liquidation prior to plaintiff's injury, (2) the availability to [the transferee] of the knowledge necessary for gauging the risks of injury from previously manufactured [units] together with the opportunity to provide for meeting the cost arising from those risks by spreading it among current purchasers of the product line and (3) the fact that the good will transferred to and enjoyed by [the transferee] could not have been enjoyed by [the transferor] without the burden of liability for defects in [units] sold under its aegis.

*Ray v. Alad,* at 25.

In *Ray* the sale of the business and the injury to the plaintiff occurred within the space of 9 months, and the maker of the defective product sold the company assets directly to the defendant, who continued to sell the same product line and benefited from the trade name and goodwill of the transferor. The court fashioned a new exception to the rule of nonliability:

> [A] party which acquires a manufacturing business and continues the output of its line of products under the circumstances here presented assumes strict tort liability for defects in units of the same product line previously manufactured and distributed by the entity from which the business was acquired.

*Ray v. Alad,* at 34.

While the policy considerations expressed in *Ray* reflect many of the arguments used in establishing rules of liabil-

ity for defective products in Washington,[2] the facts of this case demonstrate that, even if the *Ray* exception was adopted, the plaintiff would not fall under its terms. Four factors are persuasive: (1) well over 20 years passed between the manufacture of the California Cleat Saw and the injury; (2) California Engineering and Machine Works went through numerous transfers preceding the defendants' acquisition of the saw lines; (3) neither defendant has relied upon the trade name or goodwill of California Engineering and Machine Works; and (4) neither defendant ever produced a California Cleat Saw or profited from its manufacture, rendering them unable to spread the risk among current purchasers.

The passage of two decades between the plaintiff's injury and the manufacture of the cleat saw, coupled with the numerous reorganizations and changes in ownership of the original manufacturer, compels the conclusion that neither Roland Voigt nor Stetson Ross received a benefit from their acquisitions of the saw lines from P. B. Yates which relate back to California Engineering and Machine Works. *See Johnson v. Marshall & Huschart Mach. Co.,* 66 Ill. App. 3d 766, 384 N.E.2d 141 (1978). Even if all reasonable factual inferences are resolved in the plaintiff's favor, the plaintiff has failed to demonstrate the applicability of any exception to the rule of nonliability.

The summary judgment of dismissal is affirmed.

JAMES and SWANSON, JJ., concur.

---

[2]*See Seattle–First Nat'l Bank v. Tabert,* 86 Wn.2d 145, 542 P.2d 774 (1975); *Baumgardner v. American Motors Corp.,* 83 Wn.2d 751, 522 P.2d 829 (1974); *Ulmer v. Ford Motor Co.,* 75 Wn.2d 522, 452 P.2d 729 (1969).