CARMEN S. DIGUILIO, Plaintiff-Appellant, v. GOSS INTERNATIONAL CORPORATION, Defendant-Appellee (Goss Graphic Systems, Inc., n/k/a, CGSI Liquidation, Inc., *et al.*, Defendants).

First District (4th Division)   No. 1—07—1584

Opinion filed April 30, 2009.

Morici, Figlioli & Associates (James J. Morici, Jr., of counsel), and Novoselsky Law Offices (David A. Novoselsky and Leslie J. Rosen, of counsel), both of Chicago, for appellant.

Donohue Brown Mathewson & Smith LLC, of Chicago (Richard B. Foster, Karen Kies DeGrand, and Bryan J. Kirsch, of counsel), for appellee.

JUSTICE NEVILLE delivered the opinion of the court:

The plaintiff, Carmen S. Diguilio, filed a strict liability and negligence complaint against one defendant, Goss International Corporation (Goss International), for injuries he sustained on July 1, 2004, while using a printing press at work. Later, Diguilio named several additional defendants: Goss Graphic Systems, Inc., n/k/a CGSI Liquidation, Inc.; CGSI Liquidation, Inc.; Rockwell Graphic System, Inc., a corporation; Rockwell PMC, Inc., f/k/a Baker Perkins PMC, Inc., an Illinois corporation; Rockwell PMC, Ltd., a corporation; Baker Perkins Food Machinery, Inc., f/k/a Baker Perkins PMC, Inc.; Gary Hockley; and Hockley Mechanical Services, Inc., an Illinois corporation. The printing press that Diguilio was injured on was sold to his employer by Rockwell Graphic Systems, which became Goss Graphic Systems (Goss Graphic). Goss Graphic was liquidated after filing for bankruptcy in 2001. Goss International was formed in 2002 and purchased Goss Graphic's assets but did not purchase its liabilities.

Goss International filed a motion for a summary judgment and argued that it had no liability as a successor corporation (1) because it was not incorporated until 2002, (2) because it did not design or manufacture the printing press, and (3) because it did not assume Goss Graphic's liabilities following the bankruptcy court's approval of the asset purchase agreement. The circuit court granted Goss International's motion for summary judgment.

The sole issue on appeal is whether Goss International was entitled to summary judgment because, according to the asset purchase agreement, Goss International did not assume Goss Graphic's liability for Diguilio's injuries. For the reasons that follow, we affirm.

## BACKGROUND

The Baker Perkins G14 printing press was originally designed and manufactured by Baker Perkins, LLP. Banta Corporation acquired

Brookshore Lithographers in April 1988. Rockwell Graphic Systems, Inc., sold the Baker Perkins G14 press to Brookshore Lithographers on December 8, 1992, and installed it in 1993. Goss Graphic was the successor corporation to Rockwell Graphic Systems, Inc. Finally, the Banta Corporation has maintained ownership of the Baker Perkins G14 press since it was purchased on December 8, 1992.

On September 10, 2001, Goss Graphic filed a bankruptcy petition. In January 2002, Credit Suisse First Bank Global Partners, LP, later known as Matlin Patterson, placed a bid to repurchase the assets of Goss Graphic in a deal that would give (1) 67% of the shares of the new corporation to Matlin Patterson; and (2) the remaining 33% would be owned by investment banks, (a) J.P. Morgan Securities, Inc., (b) LBI Group, Inc., and (c) DK Acquisition Partners, L.P. In exchange for the ownership of their respective shares, Matlin Patterson contributed $50 million and the investment banks contributed $25 million to Goss International.

Goss Graphic attempted to reorganize but, because it was unsuccessful, filed a motion in the bankruptcy court for permission to sell its assets to Goss Acquisition Corporation, which later changed its name to Goss International. When Goss Graphic petitioned the bankruptcy court for leave to sell its assets, its shareholders were (1) Stonington Capital Appreciation 1994 Fund L.P., (2) Rockwell International Corporation, (3) Donald Gustafson, and (4) Cede & Company. When Goss Graphic petitioned the bankruptcy court to sell its assets, Goss International's shareholders were (1) CFSB Global Opportunities Partners, L.P., (2) J.P. Morgan Securities, Inc., (3) LBI Group, Inc., an affiliate of Lehman Commercial Paper, Inc., and (4) DK Acquisition Partners, L.P.

On February 8, 2002, the bankruptcy court approved the sale that was based on a proposed asset purchase agreement. In the bankruptcy court's order, the liabilities of Goss Graphic were specifically excluded from Goss International's purchase of its assets. The bankruptcy court's order was based on the asset purchase agreement, which provided that Goss Graphic's liabilities arising out of the product litigation and related expenses were specifically excluded. In addition, the February 8, 2002, order provided (1) that the sale of assets "shall be free and clear of all interests," which was defined therein as "liens, claims, encumbrances or interests," and (2) that the asset purchase agreement was confirmed by the sale order.

On July 1, 2004, Diguilio was injured while working as a printer for Banta Direct Marketing, Inc. (Banta Corporation), when his right hand became trapped in the rollers of the company's Baker Perkins G14 printing press. On March 9, 2005, Diguilio filed a strict liability

and negligence complaint against Goss International and alleged that Goss International participated in the design, preparation, advertisement, distribution, supply, maintenance, alteration and sale of the Baker Perkins G14 printing press in 1992. On June 29, 2006, Diguilio amended his strict liability and negligence complaint and added Goss Graphic Systems, Inc., n/k/a CGSI Liquidation, Inc.; CGSI Liquidation, Inc.; Rockwell Graphic System, Inc., a corporation; Rockwell PMC, Inc., f/k/a Baker Perkins PMC, Inc., an Illinois corporation; Rockwell PMC, Ltd., a corporation; Baker Perkins Food Machinery, Inc., f/k/a Baker Perkins PMC, Inc.; Gary Hockley; and Hockley Mechanical Services, Inc., an Illinois corporation, as additional defendants. None of the additional defendants appeared, so Diguilio filed a motion for a default judgment against each of the additional defendants. The circuit court granted Diguilio's motion and entered a default judgment.

On August 29, 2006, Goss International filed a motion for summary judgment (1) because Goss International was not incorporated until 2002, (2) because Goss International did not design or manufacture the Baker Perkins G14 printing press, and (3) because Goss International did not assume Goss Graphic's liabilities following the approval of the asset purchase agreement by the bankruptcy court. Therefore, Goss International argued that it had no liability.

Prior to responding to Goss International's motion for summary judgment, Diguilio filed a request for documents and took the deposition of Joseph Gaynor, the chief financial officer of Goss International. Gaynor testified that officers of Goss Graphic who were hired or elected as officers and directors of Goss International played no role in the credit bid process or the creation of the asset purchase agreement. According to Gaynor, Goss International assumed liabilities for the continuation of the business. Gaynor also testified that there was no cessation of Goss Graphic's business as a result of the asset purchase agreement. Gaynor and Brian Domer, an employee of Goss International, each testified that Goss International produced the same product lines, continued to do business with the same customers, and kept the same phone numbers. However, Gaynor also testified that the employees, officers and directors of Goss Graphic did not participate in the credit bid process of the asset purchase agreement because the negotiation was between senior secured creditors in the bankruptcy proceeding and Matlin Patterson, through the Global Opportunities Fund. Gaynor also testified (1) that the ownership interest that existed in Goss Graphic before the bankruptcy court had no economic value following the closing and liquidation, and (2) that Cede & Company, which was a stockholder in Goss Graphic before the bankruptcy, did

not acquire an interest in Goss International. According to Gaynor, any money invested by entities that were constituent parts of Cede & Company when it owned stock in Goss Graphic was new money given in exchange for an ownership interest in the new company.

Julius Pohlenz, general counsel for Goss International, also provided an affidavit that was filed in this case. In his affidavit, Pohlenz averred (1) that Goss International closed on the asset purchase agreement on February 14, 2002; (2) that the sole shareholder of Goss Graphic was Goss Holdings, Inc., which consisted of (a) Cede & Company, (b) Donald Gustafson, (c) Rockwell International Corporation, and (d) Stonington Capital Appreciation 1994 Fund L.P. Pohlenz also averred (1) that Goss Graphic did not receive any stock in Goss International in exchange for its assets that were purchased, and (2) that no individual shareholder of Goss Graphic received any stock or other consideration for the assets purchased by Goss International.

On March 9, 2007, Diguilio responded to Goss International's motion for summary judgment after taking Gaynor's deposition. On May 21, 2007, the circuit court granted Goss International's motion for summary judgment. The circuit court found that Goss International merely purchased the assets of Goss Graphic and did not assume the debts, liabilities or obligations of Goss Graphic.

## ANALYSIS

### I. Standard of Review

The purpose of summary judgment is to determine whether a genuine issue of material fact exists, not to try a question of fact. *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008) (citing *Bagent v. Blessing Care Corp.*, 224 Ill. 2d 154, 162 (2007), and *Gilbert v. Sycamore Municipal Hospital*, 156 Ill. 2d 511, 517 (1993)). Trial courts should only grant summary judgment where " 'the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Williams*, 228 Ill. 2d at 417, quoting 735 ILCS 5/2—1005(c) (West 2002). The trial court must strictly construe the pleadings, depositions, admissions and affidavits against the movant and liberally construe them in favor of the opponent. *Williams*, 228 Ill. 2d at 417. If material facts are in dispute, or if the material facts are undisputed but reasonable persons might draw different inferences from the undisputed facts, a triable issue exists and summary judgment is inappropriate. *Williams*, 228 Ill. 2d at 417.

The grant of summary judgment is a drastic means of disposing litigation and should only be granted if the right of the moving party is clear and free from doubt. *Williams*, 228 Ill. 2d at 417, citing *Adams*

*v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 43 (2004). This court reviews a trial court's summary judgment ruling *de novo. Williams*, 228 Ill. 2d at 417 (citing *Bagent*, 224 Ill. 2d at 163, and *Roth v. Opiela*, 211 Ill. 2d 536, 542 (2004)).

## II. Summary Judgment

Diguilio argues that despite Goss International's purchase of Goss Graphic's assets without the assumption of its liabilities, Goss International is liable for his injuries as the successor corporation to Goss Graphic because Goss International was a mere continuation of Goss Graphic and carried on the business of Goss Graphic.

Goss International argues that the circuit court correctly granted its motion for summary judgment because the asset purchase agreement and the express language of the bankruptcy court's February 8, 2002, order provided that the sale of assets "shall be free and clear of all interests," which was defined in the agreement as "liens, claims, encumbrances or interests." According to Goss International, the express language of the February 8, 2002, bankruptcy court's order[1] bars Diguilio's lawsuit against Goss International because it estopped and enjoined third parties from bringing an action, including a product liability or negligence action, against Goss International for transactions involving the operation of Goss Graphic's business (Goss Graphic's predecessor, Rockwell Graphic System, Inc., sold the Baker Perkins G14 press on December 8, 1992, to Brookshore Lithographers, which was owned by Banta Corporation, Diguilio's employer) prior to the February 8, 2002, order approving the asset purchase agreement.

---

[1]Paragraph 8 of the February 8, 2002, bankruptcy court order provides: "[e]xcept as expressly permitted or other specifically provided for in the Agreement or this Sale Order, except to the extent allowed by applicable environmental law, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax, and regulatory authorities, lenders, trade and other creditors holding Interests of any kind or nature whatsoever against or in the Debtors or the Acquired Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Debtors, the Acquired Assets, the operation of the Debtor's businesses prior to the closing date, or the transfer of the Acquired Assets to the Purchaser, hereby are forever barred, estopped, and permanently enjoined from asserting against the Purchaser, its successors or assigns, its property, or the Acquired Assets, such persons' or entities' interests."

## III. Strict Liability in Tort

■ In Illinois, " '[t]he purpose of strict liability in tort is to place the loss caused by defective products on those who create the risk and reap the profit by placing such products in the stream of commerce, regardless of whether the defect was caused by "negligence" on the part of the manufacturer.' " *Kaleta v. Whittaker Corp.*, 221 Ill. App. 3d 705, 713 (1991), quoting *Johnson v. Marshall & Huschart Machinery Co.*, 66 Ill. App. 3d 766, 769 (1978). There is a threefold rationale underlying strict liability in tort: (1) that the demands of our public interest in human life and safety require the implementation of broad protection against the sale of products that are defective; (2) that manufacturers represent that their product is safe and suitable and solicit and invite the public to use the product; and (3) that the business that reaps profits by placing the defectively dangerous product into the stream of commerce should bear the losses. *Kaleta*, 221 Ill. App. 3d at 713, quoting *Johnson*, 66 Ill. App. 3d at 769.

## IV. Successor Corporations Nonliability

### A. Section 363 of the Bankruptcy Code Limits the Liability of the Purchaser

Despite the public interest in discouraging businesses from placing defective products into the stream of commerce, section 363 of the Bankruptcy Code provides, in pertinent part, that a trustee may sell property free and clear of any interest in such property of an entity other than the estate, only if (1) applicable nonbankruptcy law permits the sale of such property free and clear of such interest; (2) such entity consents; (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (4) such interest is in *bona fide* dispute; or (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest. 11 U.S.C. §363(f) (2000).

### B. Illinois Case Law Limits a Successor Corporation's Liability

■ The Illinois Supreme Court has consistently held that "[t]he well-settled general rule is that a corporation that purchases the assets of another corporation is not liable for the debts or liabilities of the transferor corporation." *Vernon v. Schuster*, 179 Ill. 2d 338, 344-45 (1997) (citing *Nilsson v. Continental Machine Manufacturing Co.*, 251 Ill. App. 3d 415, 417 (1993), and *People ex rel. Donahue v. Perkins & Will Architects, Inc.*, 90 Ill. App. 3d 349, 351 (1980)). Our courts have recognized that this is the " 'general rule in the majority of American jurisdictions.' " *Vernon*, 179 Ill. 2d at 345, quoting *Leannais v. Cincinnati, Inc.*, 565 F.2d 437, 439 (7th Cir. 1977); accord 15 W. Fletcher,

Fletcher on Corporations §7122 (rev. ed. 1990). According to the supreme court, "[t]he traditional rule of successor corporate nonliability 'developed as a response to the need to protect *bona fide* purchasers from unassumed liability' (*Tucker v. Paxson Machine Co.*, 645 F.2d 620, 623 (8th Cir. 1981)) and was 'designed to maximize the fluidity of corporate assets.' " *Vernon*, 179 Ill. 2d at 345, quoting *Upholsterers' International Union Pension Fund v. Artistic Furniture of Pontiac*, 920 F.2d 1323, 1325 (7th Cir. 1990).

In this case, we note that in 1992, Rockwell Graphics sold the Baker Perkins G14 press to Brookshire Lithographers, which was owned by the Banta Corporation, Diguilio's employer. We also note that Rockwell Graphics' successor was Goss Graphic. We further note that Diguilio was injured on July 1, 2004, but his negligence and products liability claims against Goss International were based on Rockwell Graphics' sale of the G14 press in 1992 to Brookshire Lithographers, which was owned by Banta Corporation. We note that the sale took place in 1992, prior to Goss Graphic and Goss International entering into the asset purchase agreement in 2002. The bankruptcy court found that the asset purchase agreement was entered into in good faith and without collusion and approved the parties' asset purchase agreement. The bankruptcy court also found that the seller corporation and the purchaser corporation consummated the deal from arm's-length bargaining positions. Accordingly, the bankruptcy court found that Goss International was entitled to the full protection of section 363 of the Bankruptcy Code (11 U.S.C. §363(f) (2000)).

## C. Exceptions to Rule of Successor Corporation Nonliability

We recognize that in order " '[t]o offset the potentially harsh impact of the [traditional rule of successor corporate nonliability], however, the law also developed methods to protect the rights of corporate creditors after dissolution.' " *Vernon*, 179 Ill. 2d at 345, quoting *Tucker*, 645 F.2d at 623. Despite the traditional rule of successor corporate nonliability, a successor corporation can be found liable, if one of the following four exceptions applies: (1) if there is an express or implied agreement of assumption; (2) if the transaction between the purchaser and the seller corporation is a consolidation or merger; (3) if the purchaser is a continuation of the seller; or (4) if the transaction is an attempt to escape liability for the seller's obligations. *Vernon*, 179 Ill. 2d at 345 (citing *Steel Co. v. Morgan Marshall Industries, Inc.*, 278 Ill. App. 3d 241, 248 (1996), and *Green v. Firestone Tire & Rubber Co.*, 122 Ill. App. 3d 204, 209 (1984) (quoting *Hernandez v. Johnson Press Corp.*, 70 Ill. App. 3d 664, 667 (1979))). According to

the Illinois Supreme Court, the aforementioned exceptions are equally recognized in most American jurisdictions. *Vernon*, 179 Ill. 2d at 345-46 (citing *Bud Antle, Inc. v. Eastern Foods, Inc.*, 758 F.2d 1451, 1456 (11th Cir. 1985), *Welco Industries, Inc. v. Applied Cos.*, 67 Ohio St. 3d 344, 347, 617 N.E.2d 1129, 1132 (1993), and *Baltimore Luggage Co. v. Holtzman*, 80 Md. App. 282, 290, 562 A.2d 1286, 1289-90 (1989)).

In this case, Diguilio does not argue that there has been an assumption of liability because the express language of the asset purchase agreement and the bankruptcy court's order state otherwise. Diguilio also does not argue that the transaction between the seller and purchaser corporations amounted to a merger or consolidation. Similarly, Diguilio is not arguing that this transaction between the seller and purchaser corporations was an attempt by the seller to escape liability for its obligations. Therefore, Diguilio focuses on the remaining exception to the general rule of successor corporate nonliability, that there has been a continuation of the seller corporation's business.

■ We note that the continuation exception to the successor corporate nonliability rule has a specific purpose:

" '[T]o prevent a situation whereby the specific purpose of acquiring assets is to place those assets out of the reach of the predecessor's creditors. *** To allow the predecessor to escape liability by merely changing hats would amount to fraud. Thus, the underlying theory of the exception is that, if a corporation goes through a mere change in form without a significant change in substance, it should not be allowed to escape liability.' " *Vernon*, 179 Ill. 2d at 346, quoting *Baltimore Luggage*, 80 Md. App. at 297, 562 A.2d at 1293.

Diguilio argues that Goss International is a continuation of Goss Graphic. The continuation exception to the successor corporate nonliability rule requires a determination of whether the purchasing corporation is a separate entity or a mere continuation or reincarnation of the selling corporation. *Vernon*, 179 Ill. 2d at 346, citing *Grand Laboratories, Inc. v. Midcon Labs of Iowa, Inc.*, 32 F.3d 1277, 1282 (8th Cir. 1994), quoting *Bud Antle*, 758 F.2d at 1458 (is the purchasing corporation essentially wearing different clothes from the selling corporation yet maintaining the same or similar management and ownership).

■ According to *Vernon*, the test that is used by a majority of jurisdictions to determine whether one corporation is a continuation of another is whether there is a continuation of the corporate entity of the seller and not whether there is a continuation of the seller's business operations. *Vernon*, 179 Ill. 2d at 346, citing *Grand Laboratories*,

*Inc.*, 32 F.3d at 1282-83, quoting *Bud Antle*, 758 F.2d at 1458; *Travis v. Harris Corp.*, 565 F.2d 443, 447 (7th Cir. 1977). In order to properly apply the aforementioned test, the majority of courts considering this exception emphasize, as a key element of continuation, the identity of the officers, directors, and stock between the selling and purchasing corporations. *Vernon*, 179 Ill. 2d at 346-47, quoting *Tucker*, 645 F.2d at 625-26, citing, *inter alia*, *Leannais v. Cincinnati, Inc.*, 565 F.2d 437, 440 (7th Cir. 1977). "In accord with the majority view, our appellate court has 'consistently required identity of ownership before imposing successor liability under [the continuation exception].' " *Vernon*, 179 Ill. 2d at 347, quoting *Nilsson*, 251 Ill. App. 3d at 418 (and cases cited therein).

■ In this case, the record reveals that the parties to the asset purchase agreement intended that Goss International would acquire Goss Graphic's assets without assuming its liabilities. Goss International has no liability unless the transaction falls into one of the recognized exceptions to the general rule of successor corporate nonliability. *Vernon*, 179 Ill. 2d at 344-45 (citing *Nilsson v. Continental Machine Manufacturing Co.*, 251 Ill. App. 3d 415, 417 (1993), and *People ex rel. Donahue v. Perkins & Will Architects, Inc.*, 90 Ill. App. 3d 349, 351 (1980)).

## 1. Express or Implied Agreement of Assumption

Here, (1) because the asset purchase agreement provided that any liabilities arising out of product liability litigation or related expenses were specifically excluded, and (2) because the bankruptcy court's order approved the asset purchase agreement and (a) contained express language that the liabilities of Goss Graphic were specifically excluded from Goss International's purchase of the assets, and (b) contained express language that the sale of assets "shall be free and clear of all interests," which was defined therein as "liens, claims, encumbrances or interests," we find that the first recognized exception to the general rule of successor corporate nonliability (the parties had an express or implied agreement of assumption) does not apply. *Vernon*, 179 Ill. 2d at 344-45.

## 2. Transaction Between Corporations Was a Consolidation or Merger

We also find that the second recognized exception to the general rule of successor corporate nonliability (the asset purchase agreement amounts to a consolidation or merger) is not supported by the record. We recognize that Illinois courts have held that the most important factor in determining whether *de facto* or *de jure* merger has occurred is the identity of the ownership of the new and former corporations.

*Nilsson*, 251 Ill. App. 3d at 418, citing *Nguyen v. Johnson Machine & Press Corp.*, 104 Ill. App. 3d 1141, 1143 (1982). The record reveals when Goss Graphic petitioned the bankruptcy court for leave to sell its assets, the shareholders of Goss Graphic were (1) Stonington Capital Appreciation 1994 Fund L.P., (2) Rockwell International Corporation, (3) Donald Gustafson, and (4) Cede & Company. The record also reveals when Goss Graphic petitioned the bankruptcy court to sell its assets, the shareholders of Goss International were (1) CFSB Global Opportunities Partners, L.P., (2) J.P. Morgan Securities, Inc., (3) LBI Group, Inc., an affiliate of Lehman Commercial Paper, Inc., and (4) DK Acquisition Partners, L.P. The record reveals that the entities that were stockholders in Goss Graphic or were constituent parts of entities that were stockholders in Goss Graphic lost the value of their investments in the original company and purchased new interest in Goss International. The record also reveals that the majority ownership of Goss International consisted of entities that were not involved with Goss Graphic. The record further reveals that Goss Graphic did not receive any stock in Goss International in exchange for the assets that were purchased from Goss Graphic, and (2) that no individual shareholder of Goss Graphic received any stock or other consideration for the assets purchased by Goss International. Therefore, we find that there was no identity of ownership between Goss Graphic and Goss International that would justify the application of the second recognized exception that the transaction amounts to a consolidation or merger to the general rule of successor corporate nonliability. *Vernon*, 179 Ill. 2d at 345.

### 3. Purchaser Continuation of Seller

The third recognized exception to the general rule of successor corporate nonliability is that the purchaser is merely a continuation of the seller. *Vernon*, 179 Ill. 2d at 345. In light of our finding that the transaction between Goss Graphic and Goss International did not result in a consolidation or merger of these corporations and that Goss Graphic and Goss International did not have an identity of ownership, for the reasons previously stated, we find that Goss International, the purchaser, is not a continuation of Goss Graphic, the seller. *Vernon*, 179 Ill. 2d at 345.

In essence, Diguilio is arguing that the alleged continuity of ownership comes from the fact that Goss International produced the same product lines, continued to do business with the same customers and kept the same phone numbers as Goss Graphic. However, our courts have consistently rejected taking a product line approach to successor liability. See *Myers v. Putzmeister, Inc.*, 232 Ill. App. 3d 419, 426 (1992),

citing *Gonzalez v. Rock Wool Engineering & Equipment Co.*, 117 Ill. App. 3d 435 (1983); *Nguyen v. Johnson Machine & Press Corp.*, 104 Ill. App. 3d 1141 (1982); *Domine v. Fulton Iron Works*, 76 Ill. App. 3d 253 (1979); *Hernandez v. Johnson Press Corp.*, 70 Ill. App. 3d 664 (1979); *Johnson v. Marshall & Huschart Machinery Co.*, 66 Ill. App. 3d 766 (1978). We see no reason to depart from our court's consistent rejection of the product line approach in this case and, accordingly, find that Goss International is not a continuation of Goss Graphic. *Vernon*, 179 Ill. 2d at 345.

### 4. Transaction Is an Attempt to Escape Liability for Seller's Obligations

The fourth and final recognized exception to the general rule of successor corporate nonliability is that the transaction is for the fraudulent purpose of escaping liability for the seller's obligations. *Vernon*, 179 Ill. 2d at 345. Our review of the record revealed no evidence of fraud underlying the transaction between Goss Graphic and Goss International. On the contrary, in the February 8, 2002, order, the bankruptcy court found (1) that the asset purchase agreement (a) was supported by consideration that was both fair and reasonable, (b) was the highest or otherwise best offer for the acquired assets, (c) would provide a greater recovery for the debtors' creditors and other interested parties than would be provided by any other practical available alternative, and (d) constituted reasonably equivalent value under the Bankruptcy Code, and (2) that the asset purchase agreement was not the product of collusion, bad faith or an inequitable bargaining position. Therefore, we find, based upon the lack of evidence of a fraudulent purpose of escaping liability for the seller's obligations, that the fourth and final recognized exception to the general rule of successor corporate nonliability does not apply in this case. *Vernon*, 179 Ill. 2d at 345.

### CONCLUSION

In this case, after reviewing the pleadings, depositions and admissions on file, there is no material issue of fact because Diguilio's claims for negligence and strict liability fall within the excluded liabilities provision in the asset purchase agreement that was approved by the bankruptcy court in its February 8, 2002, order. Moreover, Goss International is entitled to a judgment as a matter of law because (1) it was a *bona fide* purchaser, having purchased the assets of Goss Graphic pursuant to an asset purchase agreement that was approved by the Bankruptcy Court (11 U.S.C. §363(f) (2000)), and (2) it is a successor corporation, and therefore, it is not liable for the debts or liabilities of the transferor corporation. *Vernon*, 179 Ill. 2d at 345. Ac-

cordingly, we hold that the circuit court correctly granted Goss International's motion for summary judgment, and we affirm the circuit court's May 21, 2007, order. *Williams*, 228 Ill. 2d at 417, quoting 735 ILCS 5/2—1005(c) (West 2002).

Affirmed.

O'BRIEN, P.J., and STEELE, J., concur.