ALBERT BARRON, Plaintiff, *v.* KANE AND ROACH, INC., *et al.*, Defendants.—(FOUR STATES MACHINERY COMPANY, Third-Party Plaintiff-Appellant, *v.* BIRDSBORO CORPORATION, Third-Party Defendant-Appellee.)

First District (1st Division)    No. 78-93

Opinion filed December 3, 1979.

James T. Ferrini and Thomas H. Ryerson, both of Clausen, Miller, Gorman, Caffrey & Witous, P. C., of Chicago, for appellant.

William J. White, Hugh C. Griffin, and Norman J. Lerum, II, all of Lord, Bissell & Brook, of Chicago, for appellee.

Mr. JUSTICE McGLOON delivered the opinion of the court:

This appeal arises out of a products liability action filed by plaintiff Albert Barron to recover damages for injuries he sustained as the result of alleged defects in a straightening roll machine. Plaintiff named as defendants in his complaint Kane and Roach of New York, Inc. (Kane and Roach NY), the manufacturer of the machine; Four States Machinery Company (Four States), an agent of Kane and Roach of New York who participated in the sale and distribution of the straightening roll machine; Birdsboro Corporation (Birdsboro), a Pennsylvania corporation that purchased certain assets of Kane and Roach of New York after the allegedly defective straightening roll machine had been sold to plaintiff's employer; and Kane and Roach of Pennsylvania, a Pennsylvania corporation that purchased certain manufacturing processes from Birdsboro. Four States ultimately settled with Barron and filed a third-party complaint against Birdsboro for the amount of the settlement. Pursuant to Birdsboro's motion, the trial court entered summary judgment in Birdsboro's favor and from that order Four States now appeals.

On appeal, Four States raises the following contentions: (1) the "product line" approach to successor corporate product liability shows that Four States is entitled to a trial on the merits of its third-party complaint; (2) regardless of the theoretical path chosen, the authorities recognize it would be unjust to permit Birdsboro to reap the benefits of the product line and its goodwill while denying the attendant responsibilities; (3) Birdsboro did not disclaim liability for contingent product-liability claims in its contract with Kane and Roach NY; (4) the established policies underlying strict liability in tort warrant imposing products liability on successors to the manufacturing process.

We affirm.

According to the documents and depositions before the trial court at the hearing on Birdsboro's motion for summary judgment, Four States was the exclusive distributor and broker in Illinois for Kane and Roach NY in the sense that they could not sell other manufacturer's lines of machinery which competed with Kane and Roach NY. The machine in question was manufactured in 1960 by Kane and Roach NY and sold to Ceco Steel, plaintiff's employer, with Four States acting as broker to consummate the sales. Four States expended considerable effort to consummate the sale and was paid a commission of $2,600 by Kane and Roach NY several weeks after Kane and Roach NY sold certain of its assets to Birdsboro Corporation.

The record further reflects that third-party defendant, Birdsboro Corporation, a Pennsylvania corporation, incorporated in 1959, had entered into an agreement dated December 30, 1961, by which Birdsboro purchased certain of Kane and Roach NY assets for $150,000, all of which was paid in cash. The contract specifically identified the assets of Kane and Roach NY which were to be transferred to Birdsboro. Among those assets were the entire product line of Kane and Roach NY out of which the allegedly defective machine was manufactured. The only assets which were not included in the sale were filing and storage cabinets and the old Kane and Roach building.

According to the contract Kane and Roach agreed to effect a change of its corporate name so as to "eliminate the name of Kane and Roach therefrom and to take all steps necessary to make the use of such corporate name immediately available to Birdsboro." Paragraph 7 of the agreement concerned a waiver of liability and specifically provided:

"There shall be no liability or obligation on Birdsboro to K & R or to K & R's stockholders or to others growing out of or arising from the sale by K & R of assets to Birdsboro under the provisions of this agreement and K & R hereby agrees to protect Birdsboro against and save Birdsboro harmless from any and all such liabilities and obligations."

The agreement further provided that Kane and Roach NY receive 2% of the net sales generated by Birdsboro's Kane and Roach division for a five-year period after the sale or $50,000, whichever was greater. In return, Kane and Roach NY agreed not to compete for five years.

According to the deposition of Howard Kane, the president of Kane and Roach NY, after their product line was sold, they ceased all operations. However, since the sale in 1961, Kane and Roach NY has continued to exist as a duly organized corporation under the laws of the State of New York, has paid all Kane and Roach of NY's debts and liabilities, including the commission to Four States for the sale of the machine involved in this occurrence, and continued to engage in "business activities concerning the lease and management" of its plant in New York which it still owns. Most of the money received from the sale was used to pay off debts of Kane and Roach NY. The assets transferred to Birdsboro were held in its newly formed "Kane and Roach Division" which began operations immediately after the transfer. Howard Kane entered into a contract with Birdsboro agreeing to assume the presidency of the Kane and Roach Division that would engage in manufacturing the product line of his old corporation. He further agreed not to work for any competing company in the product line. A new Kane and Roach Division of Birdsboro was formed and Howard Kane assumed the presidency of

that division in two years. His new responsibilities were nearly identical with those he had as president of Kane and Roach NY.

None of the officers or directors of Kane and Roach NY became officers or directors in Birdsboro. However, Mr. Kane testified that certain of his personnel in Kane and Roach NY moved with him to the new division in Birdsboro. Among these personnel were the sales manager, chief engineer, operations superintendent, specifications writer, the erector and the machine shop foreman.

■■ Before considering any of Four States' contentions concerning the tort liability of Birdsboro, we must determine whether the law of Illinois or Pennsylvania applies. Four States points to the provision in the contract of sale which provides that such contract is to be construed in accord with the law of Pennsylvania and, therefore, the Pennsylvania law of corporate successor liability should apply. We disagree. The question of successor liability has little to do with construing the provisions of the contract. As aptly pointed out by defendant, even Four States admits in its brief that its claim does not "arise under the provisions of this agreement [but] out of strict tort liability based on common law theories of successor corporation product liability." The question before us, namely Birdsboro's liability for injuries sustained by a user if a product manufactured by its predecessor, is unrelated to a construction of the provisions of the contract. That question of traditional tort law is to be determined in accordance with the law of Illinois, the situs of the injury and the domicile of the injured party. *Travis v. Harris Corp.* (7th Cir. 1977), 565 F.2d 443.

■■ ■ The well-established general rule in Illinois is that a corporation which buys all the assets of another corporation is not liable for the seller corporation's debts or liabilities absent an express or implied agreement to assume such debts or liabilities. (*Alexander v. State Savings Bank & Trust Co.* (1935), 281 Ill. App. 88.) Courts have recognized several exceptions to this general rule: (1) where there is an express or implied agreement of assumption; (2) where the transaction amounts to a consolidation or merger of the purchaser or seller corporation; (3) where the purchaser is merely a continuation of the seller; or (4) where the transaction is for the fraudulent purpose of escaping liability for the seller's obligations. (*Hernandez v. Johnson Press Corp.* (1979), 70 Ill. App. 3d 664, 388 N.E.2d 778.) Four States does not argue that the instant situation fits into any of the four exceptions above. It first argues that Birdsboro's agreement with Kane and Roach NY involved the purchase of an entire product line and that consequently, Birdsboro should be liable for injuries caused by defects in products of that product line manufactured even before the purchase agreement went into effect. In

support of this argument, Four States relies mainly on two cases in other jurisdictions, *Turner v. Bituminous Casualty Co.* (1976), 397 Mich. 406, 244 N.W.2d 873, and *Ray v. Alad Corp.* (1977), 19 Cal. 3d 22, 560 P.2d 3, 136 Cal. Rptr. 574.

In *Turner*, plaintiff was injured by a power press manufactured by Old Sheridan, a New York corporation established in 1903. Several years prior to plaintiff's injury, Old Sheridan had sold for cash its entire business, good will, name and assets to Harris Intertype Corporation (Harris). In considering plaintiff's complaint in products liability against Harris, the *Turner* court felt it unimportant that the corporate transfer was for cash and not stock and held that there may be a cause of action against the corporate successor "where the totality of the transaction demonstrates a basic continuity of the enterprise." The *Turner* court felt the first, third and fourth requirements of a *de facto* merger outlined below in *Shannon v. Samuel Langston Co.* (W.D. Mich. 1974), 379 F. Supp. 797, 801, relevant:

"(1) There is a continuation of the enterprise of the seller corporation, so that there is a continuity of management, personnel, physical location, assets, and general business operations.

(2) There is a continuity of shareholders which results from the purchasing corporation paying for the acquired assets with shares of its own stock, this stock ultimately coming to be held by the shareholders of the seller corporation so that they become a constituent part of the purchasing corporation.

(3) The seller corporation ceases its ordinary business operations, liquidates, and dissolves as soon as legally and practically possible.

(4) The purchasing corporation assumes those liabilities and obligations of the seller ordinarily necessary for the uninterrupted continuation of normal business operations of the seller corporation. [Citing *McKee v. Harris-Seybold Co.* (1970), 109 N.J. Super. 555, 563-67, 264 A.2d 98, 103-05, *aff'd* (1972), 118 N.J. Super. 480, 288 A.2d 585]."

Even if we were to adopt the test set forth in *Turner* and were to hold that liability of a successor corporation may exist even though the sale was for cash and not stock, the instant situation is distinguishable from *Turner*. Unlike *Turner*, where the seller ceased operations and dissolved almost immediately after the sale, Kane and Roach NY, the instant transferor corporation, is still in existence. An additional factor distinguishing the instant case from *Turner* is the fact that in *Turner* the purchaser assumed liabilities of the seller necessary to continue normal business operations of seller and the business operation was continued at the selling

corporation's original location. In the instant case, no such agreement to assume liabilities was present in the agreement, and the purchaser did not continue the business operation at Kane and Roach NY.

Plaintiff also urges us to adopt the "product line" approach to successor liability espoused in *Ray v. Alad Corp.* In *Ray* the court held that:

> "* * * a party which acquires a manufacturing business and continues the output of its line of products under the circumstances here presented assumes strict tort liability for defects in units of the same product line previously manufactured and distributed by the entity from which the business was acquired." (*Ray*, 19 Cal. 3d 22, 34, 560 P.2d 3, 11, 136 Cal. Rptr. 574, 582.)

We have already rejected this very same contention in two recent decisions, *Domine v. Fulton Iron Works* (1979), 76 Ill. App. 3d 253, 395 N.E.2d 19, and *Hernandez v. Johnson Press Corp.* (1979), 70 Ill. App. 3d 664, 388 N.E.2d 778. We are constrained to follow the results in those cases.

Four States urges also that authorities recognize it would be unjust to permit Birdsboro to reap the benefits of the product line and good will it purchased while at the same time freeing it of the resulting responsibilities. It further urges that the policies underlying strict liability in tort require the imposition of liability on successors to the manufacturing process. We find neither argument persuasive. Both of these arguments were considered and rejected by the court in *Domine*. There the court in a lengthy analysis indicated that it did not believe that "the doctrine of strict liability as developed in [Illinois] is applicable to a corporate successor" nor that "the public policy of Illinois [favored] the extension of the doctrine of product liability to a successor corporation." There is no need to repeat that analysis here.

For the foregoing reasons, the order of the circuit court of Cook County is affirmed.

Order affirmed.

GOLDBERG, P. J., and CAMPBELL, J., concur.