EDWIN N. GREEN, Plaintiff-Appellant, *v.* THE FIRESTONE TIRE AND RUBBER CO., INC., *et al.*, Defendants-Appellees.

Second District    Nos. 83—218, 83—235 cons.

Opinion filed February 29, 1984.

Gary V. Johnson and Wendell W. Clancy, both of Clancy, McGuirk & Hulce, of St. Charles, for appellant.

Colin Smith, of Burke, Bosselman, Freivogel, Weaver, Glaves & Ryan, of Chicago, for appellee Firestone Tire & Rubber Co.

J. Robert Geiman and Robert A. Seidel, both of Peterson, Ross, Schloerb & Seidel, of Chicago, for appellee Sensation Mower, Inc.

JUSTICE HOPF delivered the opinion of the court:
Plaintiff Edwin N. Green brought this action against Sensation Mower, Inc., and Firestone Tire and Rubber Company, Inc. (Firestone), alleging one count of breach of warranty and one count of negligence against each of the two corporations. Plaintiff sustained injuries while operating a lawnmower allegedly manufactured by Sensation Mower, Inc., and sold by McCornack Tire & Service, Inc., of St. Charles, Illinois. It is claimed that Sensation Corporation is a successor to Sensation Mower, Inc., and that Firestone is a successor to McCornack Tire. Sensation Corporation and Firestone filed motions for summary judgment which were granted. Plaintiff appeals.

On appeal plaintiff contends that the trial court erred in granting summary judgment for defendants. During oral argument plaintiff acknowledged that in count I of his complaint he was attempting to extend the theory of products liability to a negligence claim against a predecessor corporation. Plaintiff supplies us with no authority sup-

porting such a theory, and we know of none.

Viewed from another perspective, the central issue raised on appeal concerns the liability of successor corporations under the case of *Hernandez v. Johnson Press Corp.* (1979), 70 Ill. App. 3d 664, 388 N.E.2d 778, where plaintiff was injured by a punch press and brought an action against the corporation which manufactured the press and its successor corporation. The *Hernandez* court set forth the general rule in Illinois regarding the liability of a successor corporation for debts and liabilities of the predecessor corporation. Except for certain specified circumstances, a successor corporation is not liable for the debts and liabilities of the transferor. (70 Ill. App. 3d 664, 666, 388 N.E.2d 778, 779.) In the case at bar the trial court held that the defendants, which both occupied the position of successor corporations, did not fall within the exceptions set forth by *Hernandez*. On appeal, plaintiff argued that the trial court erred in granting summary judgments because the facts presented in the instant case fall within those exceptions. In the alternative, plaintiff urges that the Illinois law relied on by the trial court is incorrect, and that there is a trend in other States which establishes a strict liability rationale. Plaintiff urges the time has arrived for Illinois to follow this new theory.

The facts of this case show that in June or July of 1969, the plaintiff's father-in-law purchased a lawnmower alleged to have been manufactured by Sensation Mower, Inc. The mower was purchased from McCornack Tire & Service, Inc., in St. Charles. Later that year, on September 14, Firestone purchased the assets of McCornack Tire & Service, Inc. Shortly after the purchase plaintiff's father-in-law died and plaintiff became the owner of the lawnmower. Over the course of the next 10 years he used the lawnmower on a regular basis until the time of the accident.

On May 25, 1980, plaintiff was injured while mowing his yard. He was pulling the mower with him as he backed up to trim an area of grass. He backed into a tree stump, fell backwards, and as he fell his foot came in contact with the blade of the lawnmower.

Ownership of the company which manufactured plaintiff's lawnmower was transferred a number of times between the date of the sale and the date of the injury. Plaintiff's complaint named both Sensation Mower, Inc., and Firestone as party-defendants. Sensation Mower, Inc., was in existence prior to 1968 and manufactured, among other things, lawnmowers. In 1968 Sensation Mower, Inc., sold certain of its assets to Sensation Manufacturing Company. The sales agreement is not a part of the record in the case at bar, and the pre-

cise date of sale is unknown. Subsequently, on August 1, 1972, Sensation Manufacturing Company entered into an agreement to sell the assets of that corporation to Sidells Warehouse of Denver, Inc., a Nebraska corporation, nominee for the Sensation Corporation, a Nebraska corporation to be formed. The agreement became effective on August 1, 1972. The articles of incorporation were subsequently filed with the Nebraska Secretary of State. The new company came to be known as Sensation, Inc.

The vice-president of Sensation Corporation, Albert Schinker, filed an affidavit in support of Sensation's motion for summary judgment. In that affidavit Schinker indicated the lawnmower identified in the complaint was manufactured in 1968 or 1969 by either Sensation Mower, Inc., or by Sensation Manufacturing Company. He did not know which company made the mower because the precise date of manufacture had not been established. He indicated that the production of that model of that lawnmower was discontinued in 1969 and Sensation Corporation did not come into existence until 1972. Therefore it was urged Sensation was not in any way involved with the design, manufacture or sale of the lawnmower identified in the complaint. The affidavit also set forth certain provisions of the agreement for the sale of assets entered into by Sidells Warehouse of Denver, Inc., a Nebraska corporation, as nominee for the Sensation Corporation, the corporation that was formed. The portion of that sales agreement which distributed the debts and liabilities of the corporation provided that certain responsibilities regarding liability insurance were made by each party. This provision is quoted in the first issue discussed below. The agreement also indicated that the sale of assets was a cash sale rather than transfer of stock. The Schinker affidavit also stated no present or former stockholders, directors, or officers of Sensation, Inc., had ever been stockholders, directors of officers of Sensation Mower, Inc., or of Sensation Manufacturing Company.

At the hearing on Sensation, Inc.'s motion for summary judgment plaintiff contended that defendant-corporation was a "mere continuation of its predecessor corporation, Sensation Manufacturing." After arguments the trial court decided that there was no genuine issue of fact presented in the briefs or affidavits. The court found that under the *Hernandez* case there was no showing in the facts presented to show an assumption of the predecessor corporation's debts by the successor corporation. (*Hernandez v. Johnson Press Corp.* (1979), 70 Ill. App. 3d 664, 388 N.E.2d 778.) The court held that the sales agreement did not provide for an assumption of debts, and because none of the exceptions set forth in *Hernandez* were present, it granted the

motion for summary judgment.

Defendant, Firestone Tire & Rubber Company, Inc., was granted summary judgment for largely the same reasons as those just discussed. The lawnmower in issue was originally purchased from McCornack Tire & Service, Inc. (McCornack), who was not named as a defendant. Approximately three months after the purchase of the lawnmower, on September 14, 1969, McCornack was sold to Firestone. That transaction was made pursuant to a sales agreement which provided:

> "5. [McCornack] will assume full liability and pay any and all taxes, unemployment compensation contributions, workmen's compensation claims or premiums and all other obligations of whatsoever kind or nature arising from the operation of the Company's business prior to the effective date. It is understood that personal property taxes assessed prior to the effective date of this Agreement shall be paid by the Company and are not to be prorated."

The deposition of Warren Kammerer, who, along with Robert McCornack, was one of the owners of McCornack, indicated that the sale of McCornack Tire was a cash sale. Robert McCornack had no involvement in the new Firestone store. Warren Kammerer was rehired as store manager and became president and 49% owner of Firestone. Firestone retained ownership of the rest of the shares of the corporation. Firestone contends that the operation of the store differs greatly from what it was as McCornack Tire. The new business was required to follow the procedures and policies of Firestone and report to Firestone's zone office. Although some of the original employees of McCornack Tire were retained, not all were rehired.

Most important is the fact that the Firestone store sold different products from McCornack Tire. Specifically the new business was directed by Firestone to not sell Sensation products, which included their line of lawnmowers.

After the hearing on Firestone's motion for summary judgment the trial court noted that there was no genuine issue of fact, that Firestone was the purchaser of the assets of McCornack Tire, and that the sale date was September 14, 1969. The court noted that it was a cash sale and no exchange of stock was made. Plaintiff made no counteraffidavit of this allegation and although plaintiff sought to bring the case within the exceptions of the *Hernandez* case (*Hernandez v. Johnson Press Corp.* (1979), 70 Ill. App. 3d 664, 388 N.E.2d 778), the court held the facts were not applicable to those exceptions. The court noted that although the mower in issue had been taken into

the Firestone store for servicing there was no structural or mechanical failure involved and therefore there was no showing of negligence on the part of defendant. Thus, it granted Firestone's motion for summary judgment as well as Sensation, Inc.'s.

Plaintiff's initial contention on appeal is that his case falls within the exceptions to the general rule that successor corporations are not liable for the liabilities of their predecessor.

■■ The general rule in Illinois has been that when a company sells its assets to another company, the new company is not liable for the debts and liabilities of the old company merely by reason of its succession. *Alexander v. State Savings Bank & Trust Co.* (1935), 281 Ill. App. 88, 96.

However, there are exceptions to the nonliability rule. Several recognized exceptions have been set forth:

> "(1) where there is an express or implied agreement of assumption; (2) where the transaction amounts to a consolidation or merger of the purchaser or seller corporation; (3) where the purchaser is merely a continuation of the seller; or (4) where the transaction is for the fraudulent purpose of escaping liability for the seller's obligations. (*Leannais v. Cincinnati, Inc.* (7th Cir. 1977), 565 F.2d 437; *Travis v. Harris Corp.* (7th Cir. 1977), 565 F.2d 443.) Exception (2) is recognized in Illinois (Business Corporation Act, Ill. Rev. Stat. 1977, ch. 32, par. 157.69(e)), and has been interpreted to include a *de facto* merger. (See *Abbott v. Fluid Power Pump Co.* (1969), 112 Ill. App. 2d 303, 251 N.E.2d 93.)" *Hernandez v. Johnson Press Corp.* (1979), 70 Ill. App. 3d 664, 667, 388 N.E.2d 778, 780.

Plaintiff urges that the first of these exceptions is applicable here. He argues that the language in the sales agreement between Sensation Manufacturing and Sensation, Inc. (as quoted below), provides that buyer agreed to include seller as a named assured for a period of five years from the closing date. Plaintiff urges that this was an assumption, either express or implied, by Sensation Corporation of its predecessor's liability. The clause in issue provides:

> "C. Seller covenants that it has had in effect a products liability insurance policy covering liabilities for defective products sold through Closing Date. Thereafter and continuing for a period of five (5) years from Closing Date, Buyer agrees to include Seller as an additional named assured in all products liability insurance policies and to furnish Seller with copies of such policies. Should adding Seller as additional insured result in additional cost to Buyer, Seller agrees to pay such additional cost."

■ This language indicates that Sensation Corporation, the buyer, agreed to include Sensation Manufacturing as named assured after the closing date. However, there is a difference between agreeing to include a predecessor corporation as a named assured and agreeing to assume the liabilities of that corporation. It could be argued that the seller wanted to have liability insurance maintained in its name expressly because buyer was not assuming liability.

In any event, Sensation Corporation urges that the quoted language should be construed to mean that it was Sensation Manufacturing that agreed to provide insurance for products sold up until the closing date. Because the product sold, the lawnmower, was sold prior to that date, Sensation Manufacturing, not the defendant Sensation Corporation, assumed liability. Factually, this argument is on solid ground. Thus, we believe the trial court was correct in ruling there was no assumption of liability or genuine issue as to a material fact on this point.

■ Plaintiff next contends that Sensation Corporation is liable under the third exception discussed in *Hernandez*, which can make a successor corporation liable "where the purchaser is merely a continuation of the seller ***." (*Hernandez v. Johnson Press Corp.* (1979), 70 Ill. App. 3d 664, 667, 388 N.E.2d 778, 780.) Here, plaintiff argues, the same name, land, inventory and type of manufactured product were continued from the predecessor corporation to Sensation Corporation. However, in order to find a merger exception to the rule of nonliability, there must be continuity of shareholders. *People ex rel. Donahue v. Perkins & Will Architects, Inc.* (1980), 90 Ill. App. 3d 349, 352-53, 413 N.E.2d 29; *Gonzalez v. Rock Wool Engineering & Equipment Co.* (1983), 117 Ill. App. 3d 435, 453 N.E.2d 792.

Plaintiff argues that the merger exception differs from the continuation exception described in *Hernandez*, but the two exceptions are inseparable. Further, plaintiff's reliance on *Cyr v. B. Offen & Co.* (1st Cir. 1974), 501 F.2d 1145, 1154, is of little assistance because, absent continuity of stock ownership, a finding of continuation is not warranted. (*People ex rel. Donahue v. Perkins & Will Architects, Inc.* (1980), 90 Ill. App. 3d 349, 353-54, 413 N.E.2d 29.) For these reasons, the trial court was correct in finding the continuation exception to *Hernandez* was inapplicable. *Hernandez v. Johnson Press Corp.* (1979), 70 Ill. App. 3d 664, 667, 388 N.E.2d 778, 780.

The next issue raised by plaintiff on appeal involves the *Hernandez* exceptions as they apply to Firestone. Here, plaintiff argues, the facts surrounding the sale of McCornack Tire to Firestone show a *de facto* merger between successor and predecessor corporations. Sec-

ondly, plaintiff argues, Firestone is a mere continuation of its predecessor.

■ In determining whether there was a *de facto* merger between corporations the *Hernandez* court stated that if there are no facts indicating "continuity of management, personnel, physical location, assets and general business operations *** [or] continuity of shareholders or an exchange of stock" (*Hernandez v. Johnson Press Corp.* (1979), 70 Ill. App. 3d 664, 667, 388 N.E.2d 778, 780), no *de facto* merger exists.

■ Management of the corporation did change when Firestone purchased McCornack Tire. Robert McCornack, who had been co-owner and co-manager of the business, had no involvement in the new business. The other co-owner and co-manager, Warren Kammerer, stayed on, but was responsible to the Firestone zone office. Thus, it appears there was some disruption in the management. With regard to business operations, it should be noted that when Firestone assumed control, the business could no longer sell Sensation mowers.

The transaction failed to meet the second test for a *de facto* merger described in *Hernandez*. It requires "a continuity of shareholders which results from the purchasing corporation paying for the acquired assets with shares of its own stock, this stock ultimately coming to be held by the shareholders of the seller corporation so that they become a constituent part of the purchasing corporation." *Hernandez v. Johnson Press Corp.* (1979), 70 Ill. App. 3d 664, 667, 388 N.E.2d 778, 780.

In the McCornack Tire to Firestone sale, there was no payment of the required assets with shares of Firestone stock. Rather it was a cash sale. Warren Kammerer came into possession of Firestone stock by virtue of an employee stock participation plan. The absence of a continuity of shareholders has been held to be a sufficient basis to defeat a finding of *de facto* merger. (*Nguyen v. Johnson Machine & Press Corp.* (1982), 104 Ill. App. 3d 1141, 1148, 433 N.E.2d 1104, 1109-10.) The trial court found there was no exchange of stock which would bring the transaction under the merger exception. *Nguyen* supports that decision. Applying the principles of *Hernandez v. Johnson Press Corp.* (1979), 70 Ill. App. 3d 664, 388 N.E.2d 778, to the facts of the case at bar, we do not believe Firestone was a continuation of McCornack Tire such that it is liable for the latter's alleged torts.

Plaintiff's final contention is that the application of the reasoning set forth in *Hernandez* makes it very difficult to hold a successor corporation liable for the torts of its predecessor, and that this can cre-

ate a harsh result. Plaintiff urges that a products liability view of corporate mergers, rather than a corporate law view, is the more enlightened approach.

Plaintiff discusses a Michigan case that adopted the product liabilities approach, *Turner v. Bituminous Casualty Co.* (1976), 397 Mich. 406, 244 N.W.2d 873. The *Turner* court recognized that strict products liability was intended to put the burden for the cost of liability on those who could best cushion the impact of the liability. Thus, to impose liability on a successor corporation was a preferred alternative to leaving a plaintiff without a remedy. *Turner* would substantially lessen the requirements for proof of a *de facto* merger. Although there is some equity to cases which follow the "product line" approach (see *Ray v. Alad Corp.* (1977), 19 Cal. 3d 22, 560 P.2d 3, 136 Cal. Rptr. 574), these cases have not been followed in Illinois.

Illinois courts have not followed the strict liability approach because it could place the burden on one who did not place an injury causing product in the stream of commerce, thereby putting the burden on one who did not create the risk of harm. *Domine v. Fulton Iron Works* (1979), 76 Ill. App. 3d 253, 395 N.E.2d 19.

This same policy argument was raised in the recent case of *Gonzalez v. Rock Wool Engineering & Equipment Co.* (1983), 117 Ill. App. 3d 435, 440, 453 N.E.2d 792, where the court refused to adopt the "product line" approach to successor liability, noting that one who has done nothing to place a product in the stream of commerce is outside the producing and marketing chain. The court found no liability for a successor corporation, despite the fact that the successor had continued its predecessor's product line.

In *Nguyen v. Johnson Machine & Press Corp.* (1982), 104 Ill. App. 3d 1141, 1147, 433 N.E.2d 1104, the court found that one who has done nothing to create a risk of injury cannot usually be burdened with the duty of preventing that injury. However, the court noted, if a successor corporation learns of a defect in its predecessor's product, it may have a duty to warn of those defects. While this is a softened approach to the situation, the *Nguyen* court balanced the conflicting interests of corporate law with strict liability principles and found no sufficient justification for changing basic principles of corporate law. The court stressed the importance of the requirement that there be a continuity of shareholders, for without that, it would not be "just to require the successor corporation to assume the liabilities of the predecessor when it has already paid a substantial price for the assets of the predecessor." (104 Ill. App. 3d 1141, 1149, 433 N.E.2d 1104.) The court also mentioned that a change in the law in this area should

come from the legislature. 104 Ill. App. 3d 1141, 1151, 433 N.E.2d 1104.

Thus, while it is clear that the courts have been struggling with this issue (see *Freeman v. White Way Sign & Maintenance Co.* (1980), 82 Ill. App. 3d 884, 403 N.E.2d 495; *People ex rel. Donahue v. Perkins & Will Architects, Inc.* (1980), 90 Ill. App. 3d 349, 413 N.E.2d 29; *Barron v. Kane & Roach, Inc.* (1979), 79 Ill. App. 3d 44, 398 N.E.2d 244), none have adopted the strict product liability approach. We do not believe the circumstances presented here should lead to a different conclusion. Therefore the trial court properly found the facts presented did not fall within the exceptions to the general rule of nonliability of a successor corporation.

For the reasons stated, we hold that the trial court did not err in dismissing plaintiff's complaint.

The circuit court of Kane County is affirmed.

Affirmed.

SEIDENFELD, P.J., and VAN DEUSEN, J., concur.