Felipe RUIZ, Plaintiff,

v.

WEILER & COMPANY, INC., a corporation, Dan Schwerdtfeger, Weiler East, Inc., a corporation, Custom Stainless Equipment Company, Inc., a corporation, and Blentech Corporation, a corporation, Defendants.

Zurich American Insurance Company, Intervening–Petitioner.

WEILER EAST, INC., Defendant/Cross–Plaintiff,

v.

CUSTOM STAINLESS EQUIPMENT COMPANY INC. and Blentech Corporation, Cross–Defendants.

WEILER EAST, INC., Defendant/Cross–Plaintiff/Third–Party Plaintiff,

v.

J & S PROVISION, INC. and Omicron Frozen Foods, Inc., Custom Stainless Equipment Company, Inc. and Blentech Corporation, Third–Party Defendants.

WEILER & COMPANY, INC.

v.

CUSTOM STAINLESS EQUIPMENT COMPANY, INC., Blentech Corporation and Weiler East, Inc., Cross–Defendants

No. 92 C 5838.

United States District Court,
N.D. Illinois,
Eastern Division.

Aug. 15, 1994.

Robert A. Clifford, Corboy, Demetrio & Clifford, P.C., Ronald W. Cobb, Jr., Lusak & Cobb, Chicago, IL, for Felipe Ruiz.

Stephen Theodore Mikus, Janice Lynn Triptow, Menges, Mikus & Molzahn, Chicago, IL, for Zurich American Ins. Co.

Randall S. Rapp, Dean M. Jeske, Foley & Lardner, Chicago, IL, for Weiler and Co., Inc.

Shelmerdeane A. Miller, Timothy Joseph Cavenagh, Law Offices of Shelmerdeane A. Miller, Chicago, IL, for Weiler East Inc.

John Martin Coleman, Robert N. Hilbert, John M. O'Halloran, Coleman & O'Halloran, Chicago, IL, for Schwerdtfeger.

Kevin James Caplis, Rosalyn Marie Golden, Thomas E. Stahr, Steven S. Helis, Querrey & Harrow, Ltd., Chicago, IL, for Blentech Corp.

Paul Vincent Kaulas, Mark E. Parsky, Purcell & Wardrope, Chtd., Chicago, IL, for Weiler and Co., Inc.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Felipe Ruiz brings this five-count complaint sounding in strict products liability, negligence, breach of warranty, and professional negligence. Presently before the court is defendant Blentech Corporation's motion for summary judgment against plaintiff Ruiz and cross-claimant Weiler East, Inc.[1] For the reasons set forth below, Blentech's motion is granted.

### I. Background

Plaintiff Felipe Ruiz alleges that he was injured while working with or near a "screw conveyer" machine at his place of employment, Omicron Foods, Inc, in Illinois. The screw conveyer had been designed and manufactured by defendant Custom Stainless Equipment Company[2] sometime in 1983, and was sold to Laredo Packing Company in Texas. When Laredo went out of business, the screw conveyor was purchased by defendant Weiler East, Inc. ("Weiler East"), in conjunction with defendants Daniel Schwerdtfeger and Weiler & Co. ("Weiler"), for resale to Omicron Foods, Inc.[3] The accident involving Ruiz occurred on June 16, 1992, approximately two and one half years after the used screw conveyor was sold to Omicron Foods. Ruiz then brought this suit, naming Weiler, Schwerdtfeger, Weiler East, Custom, and Blentech as defendants. Weiler East subsequently filed a cross-claim against Custom and Blentech.

### II. Summary Judgment Standard

Under the Federal Rules of Civil Procedure, summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). This standard places the initial burden on the moving party to identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Rule 56(c)). Once the moving party has done this, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(c). In deciding a motion for summary judgment, the court must read all facts in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *Griffin v. Thomas*, 929 F.2d 1210, 1212 (7th Cir.1991).

### III. Discussion

When Blentech filed the motion presently before the court, it became readily apparent

---

1. Although Blentech has titled its motion a motion to "dismiss and for summary judgment," it is essentially a motion for summary judgment, and has been treated by the parties as such. Accordingly, we shall likewise treat it as a motion for summary judgment.

2. Custom dissolved in 1986. The bulk of its assets were purchased with cash by defendant Blentech Corporation.. It is undisputed that no member of the Custom Board of Directors became a member of Blentech's Board of Directors, and no shares of Blentech stock were ever exchanged for the purchase of Custom's assets.

3. While the relationship among the various defendants is not exactly clear, it appears that Weiler East is a distributor of new equipment manufactured by Weiler, which in turn employs Schwerdtfeger as a sales representative. With respect to the product at issue in the present action, Weiler apparently engaged Weiler East to obtain a used screw conveyer for sale to Omicron as an incentive to Omicron to purchase new Weiler equipment.

that many of the issues raised in that motion hinged in large part upon the law to be applied in this action. We therefore provided the parties an opportunity to supplement their submissions to this court with briefs regarding the choice of law issue. Because the determination of this issue is central to our consideration of the motions, we shall address it first.

 In a diversity case where the law of two or more jurisdictions arguably applies, the federal court looks to the choice of law rules of the forum state to determine which jurisdiction's law should be used. *Goldberg v. Medtronic, Inc.*, 686 F.2d 1219, 1225 (7th Cir.1982). In tort actions, Illinois applies the "most significant contacts" test outlined in the Restatement (Second) of Conflict of Laws (1971). *Ingersoll v. Klein*, 46 Ill.2d 42, 44, 262 N.E.2d 593, 595 (1970). The factors to be considered in determining which state has the most significant contacts include:

(a) The place where the injury occurred.
(b) The place where the conduct occurred.
(c) The domicile, nationality, place of incorporation and place of business of the parties. (d) The place where the relationship of the parties is centered.

*Id.* at 45, 262 N.E.2d at 596 (quoting Tentative Draft No. 9 of section 379, Restatement (Second) of Conflict of Laws). In the present case, the injury occurred in Illinois, while the "conduct," i.e. the allegedly defective design or manufacture of the screw conveyer, occurred in California. The plaintiff is domiciled in Illinois, while Blentech is incorporated in California and Weiler East is incorporated in New Jersey. Finally, although neither Ruiz, his employer, nor Weiler East

have had any direct dealings with Blentech, this action at core relates to the sale of an allegedly defective machine to Ruiz' employer in Illinois. In sum, the two obvious possibilities for the state with the "most significant contacts" are Illinois and California. Given the above factors, we conclude that Illinois has contacts to this action at least equal to those of California; where two locales are equally appealing with respect to choice of law, there is a presumption in favor of using the laws of the state in which the injury occurred. *Pittway Corp. v. Lockheed Aircraft Corp.*, 641 F.2d 524, 526 (7th Cir. 1981); *Firkin v. United States Polychemical Corp.*, 835 F.Supp. 1048, 1049 (N.D.Ill.1993). As a result, we will apply Illinois law in our consideration of Blentech's motion. *Cf. Kramer v. Weedhopper of Utah, Inc.*, 204 Ill.App.3d 469, 474, 149 Ill.Dec. 807, 812, 562 N.E.2d 271, 276 (1990) ("In applying the test to the case at bar, Illinois has the most significant relationship in that the possible tort liability derives from applications of Illinois products liability law; the injury occurred in Illinois; and the relationship of all the parties is centered in Illinois.").[4]

 Having decided that Illinois law applies to this action, we now turn to the merits of Blentech's summary judgment motion. Blentech asserts that, as a mere purchaser of Custom's assets, it can not be held liable under Illinois law for Custom's debts and liabilities. *Green v. Firestone Tire & Rubber Co.*, 122 Ill.App.3d 204, 207, 77 Ill.Dec. 591, 594, 460 N.E.2d 895, 898 (1984) (citation omitted). Weiler East does not contest Blentech's assertion that Blentech is entitled to summary judgment under Illinois law, and

---

**4.** Ruiz also argues that California law should apply, at least with respect to Blentech, because the agreement between Custom and Blentech regarding the sale of Custom's assets to Blentech provides that "[t]his Agreement and the legal relations between the parties shall be governed by and construed in accordance with the laws of the State of California." Because the parties themselves have agreed which law should apply, Ruiz claims, there is no choice of law issue. It is clear, however, that the above provision only applies to issues arising *out of the Agreement*. As an Illinois Appellate Court noted in rejecting a similar claim:

[T]he question of successor liability has little to do with construing the provisions of the con-

tract.... The claim does not arise under the provisions of this agreement, but out of strict tort liability based on common law theories of successor corporations products liability.

*Barron v. Kane & Roach, Inc.*, 79 Ill.App.3d 44, 46, 34 Ill.Dec. 569, 571, 398 N.E.2d 244, 246 (1979). *See also Travis v. Harris Corp.*, 565 F.2d 443, 446 (7th Cir.1977) ("[T]hough the contract may be interpreted under 'Ohio law,' the questions of traditional tort law are to be determined in accords with the law of Indiana, the situs of the injury and domicile of the plaintiff."). The terms of the agreement between Custom and Blentech therefore have no impact upon our choice of law analysis.

we therefore grant Blentech's motion with respect to Weiler East. Ruiz, on the other hand, maintains that, even applying Illinois law, Blentech is liable under one of the exceptions to the general rule stated above. In *Green,* the court recognized four exceptions to the nonliability rule:

> (1) where there is an express or implied agreement of assumption; (2) where the transaction amounts to a consolidation or merger of the purchaser or seller corporation; (3) where the purchaser is merely a continuation of the seller; or (4) where the transaction is for the fraudulent purpose of escaping liability for the seller's obligations.

*Green,* 122 Ill.App.3d at 207–08, 77 Ill.Dec. at 594–95, 460 N.E.2d at 898–99. Ruiz argues that the first exception applies, because the agreement between Blentech and Custom includes the following provision:

> [Custom's president] shall cause Custom Stainless to pay, or cause Custom Stainless to segregate the funds to pay, up to fifty percent (50%) of the cost of insurance obtained by Blentech for a period of three years following the Closing Date under the purchase Agreement, up to a maximum of $50,000 covering products liability claims on products manufactured by Custom Stainless prior to the closing date.

Ruiz concludes that this amounts to an implied agreement of assumption. We disagree. We initially observe that the agreement between the companies expressly states that Custom's president "shall indemnify and hold Blentech and the property of Blentech and its business free and harmless from any and all claims, losses, damages, injuries and liabilities ... relating to or arising out of" various claims against Custom, including products liability actions relating to products manufactured by Custom prior to the date of the sale. This explicit language strongly militates against a finding of assumption of liability. Furthermore, the insurance provision quoted above does not dictate a contrary conclusion. In *Green,* the sale agreement provided that the buyer would include the seller as a named assured in all products liability insurance policies for five years after

the sale, and that the seller would pay any additional cost which resulted from this action. The court concluded that, as a matter of law, this did not amount to an implied assumption of liability, expressly noting that "there is a difference between agreeing to include a predecessor corporation as a named assured and agreeing to assume the liabilities of that corporation." *Green,* 122 Ill.App.3d at 208, 77 Ill.Dec. at 595, 460 N.E.2d at 899. In the present case, Blentech maintains that the insurance provision was included in the agreement for the purpose of providing Blentech the means to defend against lawsuits arising out of pre-agreement sales of Custom products, rather than assuming liability for those products. Indeed, the $50,000 was apparently used to pay attorney's fees in an action in Iowa in which Blentech obtained summary judgment. The analysis in *Green* is equally applicable here; in some respects, this is even a stronger case than *Green,* because there is no indication that the agreement in that case included a provision expressly *disclaiming* any assumption of liability, as exists in the present case. Accordingly, we find that the first exception does not apply.

Additionally, it is apparent that the second and third exceptions are equally inapplicable. In *Nilsson v. Continental Machine Manufacturing Co.,* 251 Ill.App.3d 415, 190 Ill.Dec. 579, 621 N.E.2d 1032 (1993), the court explained these exceptions:

> The mere continuation exception applies where a corporate reorganization has taken place, so that the corporation has simply "put on a new coat." A merger, on the other hand, involves the combining of two existing corporations into a single successor corporation. As noted, Illinois courts have consistently required identity of ownership before imposing successor liability under either theory.

*Nilsson,* 251 Ill.App.3d at 417–18, 190 Ill.Dec. at 581–82, 621 N.E.2d at 1034–35 (citations omitted). In the present case, it is undisputed that there is no identity of ownership between the two companies. Accordingly, these exceptions do not apply.[5] In sum,

---

**5.** Ruiz has not asserted that the fourth exception is applicable.

there is simply no basis for straying from the general rule of nonliability. As a result, Blentech is entitled to summary judgment.

### IV. Conclusion

For the reasons set forth above, we grant Blentech's motion for summary judgment. It is so ordered.