**Felipe RUIZ, Plaintiff–Appellant,**

v.

**BLENTECH CORPORATION, Defendant–Appellee.**

No. 95–1446.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 3, 1995.

Decided June 27, 1996.

Robert P. Sheridan (argued), Chicago, IL,
Keith A. Hebeisen (argued), Robert A. Clifford, Chicago, IL, Ronald W. Cobb, Jr., Lu-

sak & Cobb, Chicago, IL, for Plaintiff–Appellant.

Michael Resis (argued), Querrey & Harrow, Chicago, IL, for Defendant–Appellee.

Before CUMMINGS, CUDAHY, and KANNE, Circuit Judges.

CUDAHY, Circuit Judge.

Felipe Ruiz's case turns on a rather mystifying choice-of-law problem. Ruiz, a citizen of Illinois, suffered an injury in his home state from an allegedly defective product manufactured in California by a California corporation. The manufacturer has dissolved, but another California corporation has followed in its footsteps by purchasing its principal assets and continuing its business. Ruiz seeks to make the successor corporation answer for his tort claims against the manufacturer. Illinois and California have different rules for determining when one corporation is responsible, as a successor, for the tort liabilities of its predecessors. The district court concluded that Illinois' rules, which are less favorable to Ruiz, should apply. As a consequence of this conclusion, it entered summary judgment against him. Ruiz appeals this judgment, arguing that the district court incorrectly resolved the conflict between the rules adopted, respectively, by Illinois and California. We affirm.

## I.

Felipe Ruiz operated a screw conveyor in a food processing plant in Schiller Park, Illinois. On June 16, 1992, he somehow became entangled in the conveyor's machinery and sustained several grievous injuries, the most severe of which left him paralyzed. He soon filed a lawsuit in an Illinois state court, bringing claims of strict products liability and negligence, among others. The case was removed to the district court on the basis of diversity jurisdiction.

Ruiz eventually directed his case at five defendants, all of whom had some legally significant connection with the screw conveyor. Three of the five had been involved in the sale of the conveyor to Ruiz's employer. These defendants were Weiler and Company, a Wisconsin corporation, Weiler East, a New Jersey corporation, and Dan Schwerdtfeger, an agent for those two companies. Another defendant was Custom Stainless Equipment, the California corporation that had manufactured the conveyor in 1983 and had dissolved in 1986. The last defendant was an entity that Ruiz identified as the successor to Custom Stainless' liabilities in tort. When Custom Stainless dissolved, it sold all of its assets for cash to Blentech, another California corporation. Blentech continued to manufacture Custom Stainless' product lines under its own name, using the same product designs, the same factory, the same management and the same employees. Ruiz contended in the district court that California law defined the relationship between Custom Stainless and Blentech and, therefore, between Blentech and himself. According to Ruiz's interpretation of that law, Blentech's assimilation of Custom Stainless included an assumption of strict liability for any defective products that Custom Stainless had manufactured.

Schwerdtfeger and the two Weilers settled with Ruiz, and Ruiz won a default judgment against the defunct Custom Stainless. The fifth defendant, Blentech, resisted Ruiz's claim by arguing that it did not belong in the case at all. Blentech maintained that its purchase of Custom Stainless' assets had not involved a conveyance of Custom Stainless' tort liabilities, and it made this argument the basis for a motion for summary judgment. The district court held that Illinois law defined the relationship between Custom Stainless, Blentech and Ruiz, and that Illinois law would not permit Ruiz to sustain an action against Blentech. Therefore, the court granted summary judgment to Blentech. *See Ruiz v. Weiler,* 860 F.Supp. 602, 604–06 (N.D.Ill.1994).

## II.

Ruiz appeals the entry of summary judgment in Blentech's favor. When considering a summary judgment, our review of matters both factual and legal is *de novo. Apperson v. E.I. du Pont de Nemours & Co.,* 41 F.3d 1103, 1106 (7th Cir.1994). Of course there are not issues of fact; Ruiz only con-

tests the district court's legal rulings. He contends that the district court erred by holding that Illinois tort law determined the nature of Blentech's liabilities as a successor to Custom Stainless. He believes that California corporate law should inform this determination and that it prescribes a result favorable to him. He also argues that, even if Illinois law applies, the district court misinterpreted its prescriptions regarding the products liability of successor corporations.

### A.

As an initial matter, Blentech questions whether we have jurisdiction to consider these arguments. It maintains that the summary judgment in its favor is not the product of a final order under the terms of Federal Rule of Civil Procedure 54(b) and, as such, is not yet appealable.

When a case involves multiple claims against multiple parties, as this one does, Rule 54(b) provides that the district court can put in final form orders with respect to individual claims in one of two ways. When the court enters an order that disposes of a part of the case, it can make an express determination that the order is a final judgment. Alternatively, it can put in final form each of the orders involving individual claims by disposing of all of the claims together.

Blentech suggests that the district court did not put the summary judgment in Blentech's favor in final form through either of these means. The record shows that the district court has not expressly determined that the summary judgment is a final judgment; and Blentech contends that the district court has not yet disposed of Ruiz's companion claim against Custom Stainless. Although it acknowledges that the district court granted Ruiz's motion for a default judgment against Custom Stainless, Blentech believes that the district court had not fixed the damages to which Ruiz is entitled. As Blentech points out, our cases have held that an order fixing liability but not damages is not a final order. *Mercer v. Magnant,* 40 F.3d 893, 896 (7th Cir.1994); *Kaszuk v. Bakery & Confectionery Union,* 791 F.2d 548, 553 (7th Cir.1986).

But, in some situations, a district court can issue a final order granting a motion for a default judgment without explicitly fixing damages. When a party moves for a default judgment, presents substantial evidence supporting its request for damages and encounters no meaningful opposition, the district court's decision to grant the motion includes an implicit assessment of the damages in the requested amount. *See O'Brien v. R.J. O'Brien & Assocs., Inc.,* 998 F.2d 1394, 1404–05 (7th Cir.1993).

This rule applies here. On December 7, 1994, Ruiz moved for a default judgment against Custom Stainless, requesting damages of $8 million and providing extensive evidence to substantiate that request. Blentech opposed this motion, but the district court concluded that it did not have standing to do so and therefore disregarded its arguments. In an order of January 19, 1995, the court granted Ruiz's motion for default judgment against Custom Stainless. This grant included an implicit assessment of damages against Custom Stainless of $8 million. This order is, therefore, final. Because the district court had also entered final orders against all of the other defendants, the order granting summary judgment for Blentech is final and appealable.

### B.

Ruiz's challenge to the summary judgment for Blentech relies on his argument that the choice of state law governing the crucial issues in the case was in error. In a diversity case, of course, state law governs, and the district court determines what state law to apply in accordance with the choice-of-law principles of the state in which it sits. *GATX Leasing Corp. v. National Union Fire Ins. Co.,* 64 F.3d 1112, 1114 (7th Cir.1995). The district court here was bound by the choice-of-law method defined by the Restatement (Second) of Conflicts of Law, which Illinois has adopted. *Ingersoll v. Klein,* 46 Ill.2d 42, 262 N.E.2d 593, 595 (1970).

The Second Restatement method is constructed around the principle that the state with the most significant contacts to an

issue provides the law governing that issue. *See id.* at 42, 262 N.E.2d at 594–95. A court therefore conducts a separate choice-of-law analysis for each issue in a case, attempting to determine which state has the most significant contacts with that issue. *International Adm'rs, Inc. v. Life Ins. Co. of North America,* 753 F.2d 1373, 1376 n. 4 (7th Cir.1985). The Second Restatement enumerates specific factors that identify the state with the most significant contacts to an issue, and the relevant factors differ according to the area of substantive law governing the issue and according to the nature of the issue itself. *See, e.g.,* Restatement (Second) at §§ 6, 145, 188. To properly apply the Second Restatement method, a court must begin its choice-of-law analysis with a characterization of the issue at hand in terms of substantive law. *Id.* at § 7. By prescribing this analytical approach, the Second Restatement follows the principle of *depecage,*[1] which has been long applied in connection with various methods for choice of law. *See* Willis L.M. Reese, *Depecage: A Common Phenomenon in Choice of Law,* 73 Colum.L.Rev. 58 (1973).

With respect to Ruiz's claim against Blentech, the choice-of-law analysis had crucial importance. Only two states have significant contacts with the issues raised. California was the place of the legal relationship between Custom Stainless and Blentech; and Illinois was the place of Ruiz's residence and his injury. The decisive issue in the case was whether Blentech had succeeded to Custom Stainless' liabilities by virtue of its purchase of Custom Stainless' assets and its business. Illinois and California shared a basic rule about corporate successor liability, but California provided an exception to that rule that was not available in Illinois.

■ Illinois mandates that, as a general rule of corporate law, a corporation that purchases the principal assets of another corporation does not assume the seller's liabilities arising from tort claims or from any other kind of claims. *Hernandez v. Johnson Press Corp.,* 70 Ill.App.3d 664, 26 Ill.Dec. 777, 778–79, 388 N.E.2d 778, 779–80 (1979); *Alexander v. State Savings Bank & Trust Co.,* 281 Ill.App. 88, 96 (1 Dist.1935). Illinois does recognize four exceptions to this rule. The purchasing corporation assumes the seller's liabilities when: (1) it expressly agrees to assume them; (2) the asset sale amounts to a *de facto* merger; (3) the purchaser is a mere continuation of the seller; (4) the sale is for the fraudulent purpose of escaping liability for the seller's obligations. *Hernandez,* 26 Ill.Dec. at 778–79, 388 N.E.2d at 779–80. California's corporate law establishes the same general rule and the same four exceptions. *Ray v. Alad Corp.,* 19 Cal.3d 22, 136 Cal.Rptr. 574, 578, 560 P.2d 3, 7 (1977).

■ California departs from the Illinois rules, however, by adopting a fifth exception. That exception provides that a corporation that purchases a manufacturing business and continues to produce the seller's line of products assumes strict liability in tort for defects in units of the same product line previously manufactured and distributed by the seller. *Ray,* 136 Cal.Rptr. at 582, 560 P.2d at 11. This "products line" exception applies in cases involving tort claims where: (1) the plaintiff lacks an adequate remedy against the seller/manufacturer; (2) the purchaser knows about product risks associated with the line of products that it continues; and (3) the seller transfers good will associated with the product line. *Lundell v. Sidney Mach. Tool Co.,* 190 Cal.App.3d 1546, 1551–56, 236 Cal.Rptr. 70, 74–78 (1987).

The difference between Illinois' and California's rules is decisive here because Ruiz's case against Blentech depends entirely upon whether the "products line" exception applies. Although Ruiz does argue that he can maintain a cause of action against Blentech even without this exception, it is clear that he cannot do so under the basic rule of successor liability, which both Illinois and California share. Blentech did not acquire Custom Stainless' obligations to Ruiz under one of the four standard exceptions to the general rule of successor liability. Blentech has not agreed to assume that obligation. It did expressly agree to assume all of Custom

---

**1.** When roughly translated, depecage refers to the process of cutting something into pieces. Here it refers to the process of cutting up a case into individual issues, each subject to a separate choice-of-law analysis.

Stainless' tort liabilities arising before the date of the asset sale in 1986, but it emphatically disclaimed all liabilities arising after that date, and Ruiz was not injured until 1992. Neither did Blentech and Custom Stainless combine their corporate identities, either through a *de facto* merger or through some other means. In either Illinois or California, a court will conclude that an asset sale merges two corporations or makes the buyer the continuation of the seller only if it finds an identity of ownership between the two. In effect, the *de facto* merger and continuation exceptions are identical; each exception depends upon an identity of ownership between the seller and purchaser. *See Green v. Firestone Tire & Rubber Co., Inc.,* 122 Ill.App.3d 204, 77 Ill.Dec. 591, 595–96, 460 N.E.2d 895, 899–900 (1984); *Ray,* 136 Cal. Rptr. at 578, 560 P.2d at 7; *Stanford Hotel Co. v. M. Schwind Co.,* 180 Cal. 348, 181 P. 780 (1919). When Custom Stainless sold its assets to Blentech, Custom Stainless' owners received cash, not stock, and they have not participated in the ownership of Blentech in any way. Finally, Ruiz makes no allegation that the asset sale between Blentech and Custom Stainless was an occasion for fraud; moreover, nothing in the record even remotely supports such an allegation. Thus, Blentech can be liable to Ruiz only if the "products line" exception applies.

The "products line" exception can apply in Illinois courts only through the choice of foreign law. On numerous occasions, Illinois courts have specifically declined to make the "product line" exception part of Illinois law, and they have therefore declined to apply it to tort claims governed by Illinois law. *See, e.g., Myers v. Putzmeister, Inc.,* 232 Ill. App.3d 419, 173 Ill.Dec. 130, 133–134, 596 N.E.2d 754, 757–58 (1992); *Kaleta v. Whittaker Corp.,* 221 Ill.App.3d 705, 164 Ill.Dec. 651, 657, 583 N.E.2d 567, 573 (1991); *Gonzalez v. Rock Wool Eng'g & Equip. Co., Inc.,* 117 Ill.App.3d 435, 72 Ill.Dec. 917, 921, 453 N.E.2d 792, 796 (1 Dist.1983); *Nguyen v. Johnson Mach. & Press,* 104 Ill.App.3d 1141, 60 Ill.Dec. 866, 868–69, 433 N.E.2d 1104, 1106–07 (1 Dist.1982); *Domine v. Fulton Iron Works,* 76 Ill.App.3d 253, 32 Ill.Dec. 72, 76, 395 N.E.2d 19, 23 (1 Dist.1979); *Hernandez,* 26 Ill.Dec. at 780–81, 388 N.E.2d at 781–

82. Illinois courts have not, however, specifically decided whether they would apply the "products line" exception to an issue governed by the law of a state which accepted that exception. Our research of Illinois law suggests that the crucial issue in this case is a matter of first impression in Illinois.

As it must, Ruiz's challenge to the district court's decision depends upon the contention that an Illinois court would choose California's "products line" exception as part of the law governing his claim against Blentech. In deciding whether to apply Illinois or California law, the district court considered whether Illinois or California had the most significant contacts with the tort that Ruiz alleged. *Ruiz v. Weiler & Co., Inc.,* 860 F.Supp. 602, 604 (N.D.Ill.1994). It found that the two states had essentially equal contacts with Ruiz's action, but it concluded that the balance tipped towards Illinois because there is a presumption in favor of applying the laws of the state where the alleged tort occurred. *Id.* (citing *Pittway Corp. v. Lockheed Aircraft Corp.,* 641 F.2d 524, 526 (7th Cir.1981)). On the basis of this conclusion, the district court applied Illinois law to all of the issues in the case, including both of the issues relevant to Ruiz's claim against Blentech.

Ruiz argues that the district court's choice-of-law analysis was fundamentally flawed because it failed to follow the principles of *depecage.* As we have noted, these principles prescribe that the rules of different states can determine different issues in a single case. In Ruiz's view, the issue of Blentech's assumption of Custom Stainless' tort liabilities is separate and distinct from other issues in the case; and he believes it requires an analysis of significant contacts different from the one that the district court performed. When he applies the principles of *depecage* to this issue, Ruiz concludes that the district court should have determined the legal relationship between Custom Stainless and Blentech according to California law with its "products line" exception.

■ Ruiz correctly invokes the principle of *depecage* and persuasively criticizes the district court's choice-of-law analysis. The district court threw a single analytical blan-

ket over all of the issues in the case, and this is, of course, a departure from the prescriptions of the Second Restatement. The district court should have conducted one analysis for issues of successor liability and a separate analysis for issues of tort liability. As a matter of corporate law, the issue of successor liability pertains to different significant contacts than does the tort law issue of liability for Ruiz's injury. California clearly has the most significant contacts with a sale of corporate assets by one California corporation to another. Here both corporations have their principal places of business in California. Consequently, California corporate law should determine what liabilities, if any, were conveyed when Custom Stainless sold its business to Blentech. It is equally clear that Illinois has the most significant relationship to an alleged tort befalling one of its citizens within its borders. The district court erred when, ignoring *depecage,* it applied Illinois law to all the issues in the case.

■■■ The question we now encounter is whether that error makes any difference here. Ruiz certainly believes that it does. He characterizes California's "product line" exception as a rule of corporate law—a relative of the other four exceptions to the rule determining corporate successor liability. Unlike his argument about the flaws in the district court's choice-of-law analysis, this contention is not so clearly correct. The area of substantive law to which the "product line" exception belongs is a difficult question, and the courts of several states have struggled to decide whether it is a part of corporate law or of tort law.

This struggle has been especially evident in Illinois. As we have noted, Illinois courts have often considered whether to make the "products line" exception a part of Illinois law. In opinions addressing this issue, they have advanced various explanations of the nature of this exception. Consequently, the Illinois precedents contain conflicting characterizations of the exception. Many of these cases insist that there is one and only one way to characterize this rule in terms of substantive law, but these same courts do not agree about what that interpretation would be. *Compare Kramer v. Weedhopper of*

*Utah, Inc.,* 204 Ill.App.3d 469, 149 Ill.Dec. 807, 812, 562 N.E.2d 271, 276 (1 Dist.1990) *and Barron v. Kane & Roach, Inc.,* 79 Ill. App.3d 44, 34 Ill.Dec. 569, 571, 398 N.E.2d 244, 246 (1 Dist.1979) *with Nguyen,* 60 Ill. Dec. at 871, 433 N.E.2d at 1109. The Appellate Court (First District) of Illinois aptly describes the conflict over the nature of the exception:

> if the issue [at the heart of the "products line" exception] is solely one of the assumption of the predecessor's potential liability, we find it difficult to understand how corporate law can be ignored in making the decision. Strict liability law has no principles to determine successor corporate liability. If the issue is whether the successor owes an independent duty to the plaintiff, then strict liability principles could be used to determine the issue. However, when the issue is the successor corporation's assumption of the predecessor's liability, then corporate principles must guide the decision.

*Nguyen,* 60 Ill.Dec. at 871, 433 N.E.2d at 1109. Some courts have resolved this struggle by deciding that the "products line" exception is a matter of tort law. *See, e.g., Kramer,* 149 Ill.Dec. 807, 562 N.E.2d at 276; *Barron,* 34 Ill.Dec. at 571, 398 N.E.2d at 246. Others have concluded that the exception must be a matter of corporate law. *See, e.g., Nguyen,* 60 Ill.Dec. at 871, 433 N.E.2d at 1109 (resolving its struggle by concluding that "the issue is … whether the policies and principles of strict liability justify a change in corporate law"); *Green,* 77 Ill.Dec. at 596–97, 460 N.E.2d at 900–01 (suggesting that the exception can be a matter of corporate law in some cases).

Part of the uncertainty over the nature of the "products line" exception comes from the fact that the exception has a variety of sources each of which articulates a different rationale for the exception and each of which places it within a different realm of substantive law. The way in which the exception is characterized may depend upon the source from which it comes. Michigan law has apparently established the "products line" exception as a means of making it easier to prove that the predecessor and successor

corporations have effected a *de facto* merger, although the reasoning behind this conclusion is not entirely clear. *See Turner v. Bituminous Casualty Co.,* 397 Mich. 406, 244 N.W.2d 873, 879–80 (1976). Therefore, in Michigan, the exception seems to be an instrument of corporate law that defines what must pass through an asset sale. In New Jersey, on the other hand, the supreme court has held that the exception has nothing to do with determining whether a *de facto* merger occurred. Instead, the court there held that the exception is an instrument for preserving the system of strict liability for products liability claims by imposing duties on manufacturers. *See Ramirez v. Amsted Indus., Inc.,* 86 N.J. 332, 431 A.2d 811, 819–20 (1981).

For our purposes, California's understanding of the nature of the "products line" exception is what matters. *See* Restatement (Second) at § 7(3). At least with respect to this argument, Ruiz does not ask us to generate an abstract version of the exception out of the air and make it a part of Illinois law. In any event, this would be a futile effort because Illinois courts have so emphatically rejected this request when other claimants have made it. *See Myers,* 173 Ill.Dec. at 134, 596 N.E.2d at 758 (citing cases). Ruiz does, however, ask us to apply a California rule to his case through choice of law. Because the only California rules that we can apply here are the rules of corporate law, we must see whether California characterizes the "products line" exception as a matter of corporate law.

California courts have quite clearly established that the exception is a matter of products liability law, not corporate law. The California Supreme Court derived the exception from its line of cases prescribing strict liability in tort for injuries resulting from defective products. *See Ray,* 136 Cal.Rptr. at 579–80, 560 P.2d at 8–9 (discussing the landmark products liability cases of *Greenman v. Yuba Power Prods., Inc.,* 59 Cal.2d 57, 27 Cal.Rptr. 697, 377 P.2d 897 (1963) and *Escola v. Coca Cola Bottling Co. of Fresno,* 24 Cal.2d 453, 150 P.2d 436 (1944)). Moreover, California has limited the application of the exception to cases in which it preserves a plaintiff's ability to collect on a valid strict liability claim. *See Lundell,* 190 Cal.App.3d at 1556, 236 Cal.Rptr. at 78. In this way, California has established the "products line" exception as a means of advancing the cost-shifting purposes behind its regime of strict liability for injuries caused by defective products. Unlike Michigan, California has not employed the exception generally as a means to limit efforts by corporations to erase corporate identity in the course of asset sales. Instead, California uses the exception to insure that manufacturers generally will bear the costs of defective products.

As we have noted, Ruiz could maintain his case against Blentech only if the "products line" exception applied. Because the exception is a matter of California tort law, not California corporate law, it does not apply to this case. The judgment of the district court is, therefore,

AFFIRMED.